## APPEAL OF WILLIAM HACKER, TRUSTEE.

## [ESTATE OF JACOB S. WALN.]

FROM THE DECREE OF THE ORPHANS' COURT OF PHILA-
DELPHIA COUNTY.

Argued March 21, 1888—Decided October 1, 1888.

1. When the donor of a power is the absolute owner of the estate affected by it, he may impose upon its exercise, as against a mere volunteer not a charity, any lawful restriction desired, and the execution of the power must be in strict accordance with the terms imposed.

2. Whether an instrument is under seal or not, is a question to be determined by the court on inspection, and whether or not a mark or impression made shall be held to be a seal, depends wholly upon the intention of the person executing the instrument, as exhibited on the face of the paper.

3. The donor of a power required it to be executed by a testamentary writing under the hand and seal of the donee; the will of the donee exercising the power was attested, "In witness thereof I have hereunto set my hand and seal," and was signed thus: "Ellen Waln—": as the will disclosed a manifest purpose to execute the power and an avowed purpose to affix a seal, it may be assumed that the mark (—) was made and intended for a seal; the writing in this respect was a sufficient compliance with the donor's directions, and the power was well executed.

Before GORDON, C. J.; STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY and PAXSON, JJ., absent.

No. 318 January Term 1888, Sup. Ct.; court below, No. 524 October Term 1877, O. C.

### Statement of Facts.

On December 31, 1887, the account of Edward Waln, trustee under the will of Jacob S. Waln, deceased, was filed.

By the will of Jacob S. Waln, his estate was vested in trustees for the use of his wife for life, and at her death, the estate was to be divided among the children, except S. Morris Waln, living at their mother's death, and the children of any deceased child per stirpes; the trustees were directed "then to convey by absolute deed or other requisite assurance, the share allotted to my sons Henry and Edward, to each, or his issue, their respective shares in fee simple, but to retain in trust the share of each of my daughters whether covert or single, and to pay to each of them the net income and profits thereof for their support and maintenance, free from the debts, control or liability of any present or future husband, in such sums as the same may be received; and if any of my daughters die leaving lawful issue to give the share of such deceased mother to her children after the death of her husband who shall have his life estate as tenant by the curtesy therein, and to convey the share of any unmarried daughter, or of a daughter dying married and without children, as she may by writing under her hand and seal, in nature of a last will and testament, executed in the presence of two witnesses, designate and appoint, and, in default of such appointment, to their or her brothers and sisters living, or if dead leaving issue, then to the said issue share and share alike.

The widow afterwards died, and on May 28, 1887, Ellen Waln, one of the unmarried daughters, died, leaving a will dated August 25, 1886, which was in her own handwriting and, omitting irrelevant dispositions, read as follows:

19. After all the above named or mentioned legacies shall be paid, I leave the whole of the residue of my property, all from the undivided estates of my father, Jacob S. Waln, & all from the estate of my brother, S. Morris Waln, divided or undivided, real or personal to the following named persons, to be equally portioned among them, share & share alike, *to be held in trust* for them—These are the names of my residuary legatees, viz—Sally M. Waln, my niece—Meeta Vaux, my niece—Elizabeth Waln Vaux my niece—Sally Vaux Connelly my niece J. Waln Vaux, my nephew—

20. I appoint William Hacker, my Executor—

\*      \*      \*      \*      \*      \*      \*      \*      \*

22—I have refrained mentioning names of trustees, preferring my residuary legatees should choose for themselves conjointly or separately, as they shall elect—

\*      \*      \*      \*      \*      \*      \*      \*      \*

In Witness thereof I have
Witnesses.                               hereunto set my hand and seal,

WILLIAM E. MORRIS                    ELLEN WALN—
B. WISTAR MORRIS
Novem. 25th 1886.

At the adjudication of said account, on January 11, 1888, it was shown that by deed poll, duly executed and acknowledged, and following the testamentary directions of the testatrix, the lifetenants and the residuary legatees constituted William Hacker to be their trustee, to act in and under the trusts declared by the will.   The auditing judge, ASHMAN, J., against the contention of R. W. Clay, the executor of Edward Waln, deceased, the accountant, and discussing Pepper's Will, 1 Pars. 436; Porter v. Turner, 3 S. & R. 108; Hellerman's App., 115 Pa. 120; Sidney v. Shelley, 19 Ves. 352, ruled that the power in the will of Jacob S. Waln had been well executed by the will of Ellen Waln, and made a distribution accordingly, awarding the principal of the fund to William Hacker, trustee as aforesaid.   To this adjudication, R. W. Clay, executor of Edward Waln, deceased, accountant, excepted.

On February 4, 1888, after argument, the court in banc sustained the exception, PENROSE, J., filing the opinion and decree:

We have earnestly desired to sustain the appointment in this case, but the principles with regard to the execution of powers are so well settled, and the authorities so uniform, that, to our great regret, we find ourselves unable to do so. The power of the tenant for life is derived solely from the will of the testator, her father; and the estate which it gives in default of appointment is vested, subject to being divested by nothing short of an appointment in strict compliance with the directions of the donor of the power as to the manner of exercise.   These directions may have been purely formal and suggested simply by caprice, but they are no less essential on that account.   He was dealing with his own estate, and had

the right to say precisely with what ceremonies it should be disposed of. If, as the cases show, the instrument is required to be signed in the presence of witnesses, the acknowledgment by the donee of the power, to the witnesses, of a signature not actually written in their presence, is insufficient: Sugden on Powers, 237. "Whatever arbitrary terms the grantor of the power may impose upon the party executing it, or however absurd and unreasonable they may seem to be, they must be fulfilled; as if it were required that the instrument executing the power be witnessed by persons of a particular stature, or written on paper of a particular color:" Farwell on Powers, 108; Rutland v. Wythe, 10 Cl. & F. 425; Hawkins v. Kemp, 3 East 410.

Here the donor has required the donee, in the execution of the power, not only to sign but also to seal the instrument by which it is done, and the seal, therefore, is thus made as essential as the signature: Chance on Powers, § 908. Ordinarily, the seal is affixed on a line with and immediately after the signature; but the position is immaterial, if it be clear that there is a seal (and several persons may use the same seal), and that it was affixed as such, for the purpose and with the intention of sealing the instrument: Chance on Powers, § 910, where the ruling of Lord Kenyon in Sprange v. Barnard, 2 Bro. C. C. 585, is said to have been "generally disapproved."

What constitutes a seal in Pennsylvania is well settled. In Duncan v. Duncan, 1 W. 322, Judge KENNEDY delivering the opinion of the court, said: "An impression upon wax, or something of the kind, or the wax itself, was the only kind of seal known to the common law of that country whence we have derived our common law. In addition to this, we have, by immemorial use and custom, adopted as a seal a scroll made with ink. It is in such general use that there are but few, I think, who are not intimately acquainted with its character and appearance, and it is therefore well suited to become part of our law on the subject. . . . In using even a scroll for a seal, it would seem to be proper, or at least prudent, not to depart from the common form which is generally used in making it, so that no possible doubt may be raised of its having been intended for a seal; for, according to the principle laid down in Taylor v. Glaser, 2 S. & R. 502, unless a seal,

such as is known to and recognized by the law, be affixed to the name of the party, it will not be considered a deed, although some other device may be substituted for a seal, and the words 'in witness whereof I have hereunto set my hand and affixed my seal' may be used in the attestation."

It was also decided in that case, that whether an instrument of writing be under seal or not, is a question of law to be solved by the court from inspection of the instrument. "It is," said the judge, "highly important to the interests of society, that every man should be able to determine with certainty upon looking at an instrument, whether, if genuine, it is a deed or not; that is, whether it has what the law denominates a seal affixed to it or not; but it must be obvious that unless the true character of a seal is fixed by the law, which is uniform and certain, and may be known by every one, it will oftentimes be impossible to determine whether an instru ment of writing is a deed or not. If parties are permitted to substitute any mark or device, which their imagination may suggest for a seal, and it is to be made a question of fact to be decided by a jury whether it was so intended or not, it will not only introduce great confusion and uncertainty, but a principle which cannot be carried into effect without repealing some of the provisions of our statutes providing for the recording of deeds." A seal is quite as essential to the execution of a power calling for it, as it is under the recording acts.

In the present case, the donee of the power, as an inspection of the instrument shows, has used neither wax, wafer, nor scroll; and, unless the mark of punctuation known as a dash — a narrow line, perhaps a sixteenth of an inch in length, following her signature in the place usually occupied by a period is to be regarded as a seal, she has failed to comply with the requirements of the power in this respect, and the estate passes to, or, more properly speaking, continues in the persons entitled under the original will, in default of appointment, just as if there had been no attempt to execute it.

Conceding, notwithstanding what is said in Duncan v. Dun can, as to the mischief which would arise if it were permitted to substitute for a seal "any mark or device which the im agination may suggest," that a dash may take the place of the ordinary scroll, it must at least appear that it was used with

that intention and for that purpose ; and here this is opposed by the fact, as the instrument itself shows, that the donee frequently, if not habitually, employs this character in place of a period, which the authorities on punctuation say should always follow the signature to a document, and not as a seal at all.

Nor is the case aided by the concluding sentence of the will, " In witness whereof I have hereunto set my hand and seal ; " for, as was decided in Taylor v. Glaser, 2 S. & R. 502, cited in Duncan v. Duncan, if in point of fact the seal has not been affixed, the assertion goes for nothing.  In that case, a flourish under the signature was held, in spite of such assertion, not to be a seal, though, as is well settled, the position of the seal is quite immaterial : Liggett v. Long, 19 Pa. 499.  It is not likely the decision would have been different, if, the body of the instrument showing the maker's frequent use of a — for a period, the signature had been followed by the same method of punctuation.

Duncan v. Duncan goes still further.  It was there held that a ribbon attached at the place proper for the seal, by being inserted in slits cut for the purpose, was not in law a seal, though Chief Justice GIBSON, before whom the acknowledgment of one of the grantors had been taken, had used it as such and so declared in his certificate.  This was not on the ground that it was not an official seal, for in such case an official seal is not required under any act of assembly, but that it was not a seal at all, and that calling it such did not make it one.

It was argued that, as the last word in this will, at the conclusion of the sentence above quoted, was " seal," and a seal might precede as well as follow the signature, the word so written, coupled with the declaration in which it was contained, must be accepted as the seal itself.  The argument, which is similar to that urged in Taylor v. Glaser, is ingenious but not convincing.  The words were written by the donee herself, and manifestly expressed an immediate intention to do something after they were written.  The declaration was, that she had thereunto set " her hand and seal ; " she certainly had not yet set her hand, because she immediately proceeds to sign the instrument, intending, perhaps, to set the seal also, but failing to do it.  It is impossible to believe that

this testatrix, who was a lady of great intelligence, and, it is reasonable to suppose, not unfamiliar with ordinary legal forms, believed or intended that the word thus used as part of the text of her will should take the place of a seal; and her incomplete intention to add one, cannot, under the authorities, be accepted as a compliance with the requirements of the power.

In the late case of Miller v. Ruble, 107 Pa. 395, where the deed was sealed but not signed by the husband of one of the parties, it was sought to supply the omission by the concluding sentence, " In testimony whereof the said parties have hereunto set their hands and seals the day and year first above written," and also by the fact that sealing, not signing, was the essential part of the execution of a deed; but it was held, though the husband had acknowledged the instrument before a justice of the peace, that the omission was fatal.

It is true that equity will, in favor of a wife or children, charities, purchasers, or creditors, relieve against defects in the execution of powers, where the defect is only with regard to matters of form, and the omission of a seal is of this character; but this relief is never granted in favor of mere volunteers, not dependent for support upon the donee of the power; and, if the appointment be to some who are within the protected class and also to others who are not, the relief given will not be extended to the latter.

Nothing could be more technical than this branch of the law, nor, as applied to the circumstances of the present case, more opposed to our sense of what ought to be done. It may be that the Supreme Court, which in questions not arising under the constitution or the laws of the United States, is not restrained by the fear of any higher tribunal, may feel at liberty to do what in England required an act of parliament, and hold the absence of a seal no longer material. Judge BRACKENRIDGE, in Alexander v. Jameson, 5 Binn. 246, where he expressed the opinion that a seal was simply a relic of bygone days of ignorance, intimates that such a course would be proper; but the Orphans' Court cannot make or unmake the law, and until the decisions in the cases referred to have been overruled, we are bound to follow them.

Opinion of Court below.

Exception sustained, and adjudication modified accordingly.

A dissenting opinion was filed by ASHMAN, J.:

The argument of the majority opinion may be conceded to be sound, and yet its conclusion may be doubted. It is true that every form prescribed by the donor of a power must be respected by the donee, and that the latter may not object, by way of excuse for his neglect, that the formality is useless. It is also true, that where a writing is required to be sealed, an attestation clause stating that it is sealed, but without an actual seal, will not validate the instrument.

In Taylor v. Glaser, 2 S. & R. 502, there was no pretence of a seal, and only a flourish under the name of the grantor. In Duncan v. Duncan, 1 W. 322, a ribbon had been inserted, but only as a preliminary to sealing, and it showed on its face that no seal had been impressed. In the present case the donee executed the power by an instrument which appeared to possess every requisite appointed by the donor. Her will contained all necessary disposing words, with a testimonium clause that she had affixed her hand and seal; and her signature was accompanied by a dash or straight line, in the place appropriated to a seal. Why may not this mark be regarded as a seal? The word "seal" itself, without any mark, when annexed to the grantor's name, has been held a proper symbol: Whitely v. Davis' Lessee, 1 Amer. Law Rep. 333; 1 Swan (Tenn.) 333.

The majority opinion seems to intimate that because the stroke was only one sixteenth of an inch in length, it was too small; but surely this reason will not be pressed. But it is also argued that because the testatrix had elsewhere in the will used a dash in lieu of a period, the character cannot be accepted here as a seal. Why not? May not the same character be used for different purposes, just as the writer may intend it? The testatrix declared that she had sealed the will, and the will shows that in the place where a seal is always placed, she had made a dash. Must her declaration go for nothing, because she had in some places used the dash as a period? The opinion says the rules of punctuation required that she should use a period after her name. But it is evident that the testatrix did not always obey the rules of punctuation.

She placed the ordinary period at the end of some sentences and a dash at the end of others, and at the close of one sentence she made no mark at all. Neither of the witnesses to the will observed these rules; there was no period to their signatures, and there was none to the date which was written below. The will itself was written by the testatrix, and with the belief, it is fair to presume, after the declaration of TILGHMAN, C. J., in Alexander v. Jameson, 5 Binn. 241, "every man now takes what seal he pleases," that any device would answer for a seal.

The court, and this is said with great respect, have now gone beyond the limits reached by any reported case. In every instance, in which an instrument has been held to be unsealed, the writing contained no mark or character whatever, where a seal should have appeared. Duncan v. Duncan was not an exception; a loose ribbon had been inserted, which is not said to have been even tied, and which the slightest friction might have detached from the paper; and the sole purpose of which was to form a background for the wafer or wax. On the other hand, a piece of paper, fastened by mucilage to an instrument, is a sufficient sealing: Turner v. Field, 44 Mo. 382.

Without any approach to levity, it seems as illogical to say that the testatrix could not have intended this mark as a seal because it is sometimes used as a period, as to say that when she spoke of her "seal," she must have intended a fish, because a "seal" is sometimes a fish. It will be found that when astuteness has been resorted to, courts have employed it to uphold and not to defeat the intention of a donee. Where the power directed an appointment by will under seal, Lord Kenyon held that a will written on stamped paper was a valid execution, for the reason that the stamp was equivalent to a seal: Sprange v. Barnard, 2 Bro. C. C. 585. And Mr. Sugden refers to a decision of Lord Eldon, that a deed attested to have been under seal and delivered, will, in the absence of contrary evidence, be presumed to have been sealed, although no impression appears upon the parchment: Sugden on Powers, 1 Am. ed., 236.

The first of these cases has been criticised, but neither of them has been overruled; and they go far beyond what is required to sustain this will.

Arguments.

From the decree of distribution as ordered by the court in banc, William Hacker, trustee, etc., under the will of Ellen Waln, took this appeal, specifying the said decree as error.

*Mr. N. Dubois Miller* (with him *Mr H. G. Clay*), for appellant:

It is very clear that Jacob S. Waln used the phrase, hand and seal, in his will, as a mere legal phrase to indicate the execution of an instrument, without attaching to it any importance at all. The point he wished to secure was the execution of a solemn testamentary paper in the presence of two witnesses. The court is not now asked to dispense with any specific requirement which the donor chose to exact; but simply to declare that, the real intention of the donor having been to secure such execution of a testamentary paper, the condition was exactly filled by the donee of the power: Bingham's App., 64 Pa. 349; Porter v. Turner, 3 S. & R. 108; Doe v. Burdett, 6 Nev. & M. 259; In re Emerson, L. R. 9 Irish 445. Pepper's Will, 1 Pars. 436, is really not an authority in point. It will be found, on examining the will in that case, that Margaret Pepper never either had or expressed an intention to affix a seal. This court is therefore free to declare the law of this state on this important point, for the first time. The glory of the common law is its adaptability to new conditions and circumstances in the life of the people: Howe S. M. Co. v. Sloan, 87 Pa. 440.

*Mr. Thomas De Witt Cuyler*, for the appellee:

The provision in the will of Jacob S. Waln was plain and unambiguous. No uncertainty marks any of its directions. He directed, as one of the requirements necessary to pass the share of Ellen Waln in his estate, that the only method by which this could be done was by means of a "writing under her hand and seal, in the nature of a last will and testament." His right so to do cannot be questioned. The language employed admits of no discretion. Its terms were fully known to the decedent, and with the failure on her part to comply with any individual requirement the disposition must fall.

OPINION, MR. JUSTICE CLARK:

The only question to be decided in this case is, whether or not Ellen Waln properly exercised the power of appointment given her in the last will and testament of her father, Jacob S. Waln, deceased. The testator, Jacob S. Waln, devised and bequeathed all his property, real, personal, and mixed, to certain persons named in his will upon certain trusts, viz.: to pay the net income thereof to his wife, Sarah M. Waln, during the term of her life; at her death to apportion the trust estate into as many shares as he had children, and to convey to his sons, Henry and Edward, their respective shares in fee; to pay to each of his daughters, whether covert or single, the income of their respective shares for their maintenance and support; or, in case of their marriage and death, to their surviving husbands or children respectively, as the case might be; "and to convey the share of any unmarried daughter, or of a daughter dying married and without children, as she may by writing under her hand and seal, in nature of a last will and testament, executed in the presence of two witnesses, designate and appoint, and, in default of such appointment, to their or her brothers or sisters living, or if dead leaving issue, then to the said issue share and share alike."

Ellen Waln, one of the daughters who was unmarried and without issue, made and published her last will and testament, wherein she undertook to exercise the power of appointment reposed in her by her father's will, referring specially to the property covered by the trust, and over which she was invested with the power. Her will is in due form, was signed by her in the presence of two witnesses, was after her death duly probated and recorded, and it is conceded to be a perfectly valid disposition of her estate.

It is contended, however, that the will is not a valid exercise of the power because it is not in compliance with the donor's directions in this, that it is not a writing under seal. The testimonium clause of the will is in these words: "In witness thereof I have hereunto set my hand and seal;" and to this is appended the signature in the form following: "Ellen Waln—" No wafer or scroll in the usual form was affixed for a seal, nor was there any flourish of the pen in lieu thereof other than the dash " — " following the name, which was per-

haps from one sixteenth to one eighth of an inch in length, and was made by the pen apparently in connection with the signature. The estate of Ellen Waln was for life only; the fee, under this particular provision of her father's will, was vested in those entitled in default of appointment, subject to be divested, however, on a proper execution of the power. It may be conceded too, that it was essential that the exercise of the power should be in strict compliance with the directions contained in the will of Jacob S. Waln, deceased; he was the owner of the entire estate, and had a right to dispose of it as he pleased; therefore, any terms which he saw fit to impose must be fulfilled, or the execution is fatally defective : Rutland v. Wythe, 10 Cl. & F. 419.

The world has outgrown the necessities of an age when men made their seals because they could not write; what then from necessity attested the very act of execution and the genuineness of it, is now but a mere arbitrary form, through which, however, special obligations still attach, in support of the well-recognized distinction between writings which are sealed and those that are not. " Although in this and many of our sister States," says Chief Justice TILGHMAN, in Taylor v. Glaser, 2 S. & R. 502, " the law has been somewhat relaxed in favor of custom and convenience in doing business, yet this relaxation is confined to the manner of making a seal. Sealing and delivering is still the criterion of a specialty; and it is important that the distinction between specialties and writings should be preserved in the courts; because, in payment of debts due from the estates of deceased persons and in other cases the law makes the distinction. If it should be thought that in the present state of society it would be best to put all writings on the same footing, the legislature alone has power to accomplish it."

That the writing should be " under seal," it may be conceded, was in this instance a mere technical requirement, which could not in any way affect the substance of the instrument, or add to or subtract from the testator's rights; yet it was competent for him, as against a mere volunteer, not a charity, to impose any lawful restriction upon the execution of the power which his judgment would approve or his fancy suggest.

Was the will of Ellen Waln under seal? This is the ques-

tion upon which the determination of this case depends. It is plain that in the preparation of her last will, the testatrix intended to exercise this power of appointment and to exercise it in the way designated by the donor. She made particular reference to the property over which she had the power, and in proper form and phrase disposed of it, designating and appointing the persons to receive it. She subscribed her name with the mark following, in the presence of two witnesses, and in the testimonium clause states, in terms, that she has affixed her hand and seal. Under such special circumstances may we not assume that the testatrix intended this dash of the pen as a seal? A seal is not necessarily of any particular form or figure; when not of wax it is usually made in the form of a scroll, but the letters "L. S." or the word "Seal," inclosed in brackets or in some other design, are in frequent use. It may, however, consist of the outline without any inclosure; it may have a dark ground or a light one; it may be in the form of a circle, an ellipse, or a scroll, or it may be irregular in form; it may be a simple dash or flourish of the pen: Long v. Ramsay, 1 S. & R. 72. Its precise form cannot be defined; that, in each case, will depend wholly upon the taste or fancy of the person who makes it.

The mere fact that in the testimonium clause the testatrix states that she has affixed her hand and seal, is insufficient to constitute the instrument a writing under seal, if in fact there be no seal; but if there be any mark or impression which might reasonably be taken for a seal, this statement of the testatrix will certainly afford the strongest evidence that the mark was so intended. In Taylor v. Glaser, supra, there was nothing but a flourish of the pen below the signature, and it was offered to be shown that this accompanied Glaser's ordinary signature. There was nothing on the face of the paper, which, in the opinion of the court, the obligor could have intended for a seal. To the same effect is the case of Duncan v. Duncan, 1 W. 322, where a ribbon had been inserted, manifestly as a preliminary to the act of sealing, which act was never performed.

Whether the instrument is under seal or not, is a question to be determined by the court upon inspection; and whether or not any mark or impression shall be held to be a seal, de-

pends wholly upon the intention of the party executing the instrument, as exhibited on the face of the paper itself. The dash which follows the signature in this case, it must be conceded, is not in the usual or ordinary form of a seal, but as no particular form is prescribed by law, we think that upon a consideration of the plain requirements of the writing creating the power, and of the manifest purpose and effort of the testatrix to execute that power, in the manner designated, and her avowed purpose to affix a seal, together with the presence of a mark or flourish of the pen, which may be taken as such, we are justified in assuming that the mark was made and intended for a seal, and that the writing is in this respect in compliance with the donor's directions. It is said that the same or a similar mark is found in other parts of the will, used for punctuation, and that this is a circumstance evidencing a different intention of the testatrix. But if the testatrix did use a mark in this form indifferently for a comma, a colon, or a period, what good reason is there for supposing she did not also use it for a seal?

The decree of the Orphans' Court is reversed, and the record remitted, in order that a decree may be made in accordance with this opinion.