644 A.2d 789

BENEFICIAL CONSUMER DISCOUNT, a Pennsylvania
Business Corporation, Appellee,

v.

Philip E. DAILEY and Brenda J. Dailey, His Wife, Appellants.

Superior Court of Pennsylvania.

Argued April 27, 1994.

Filed July 11, 1994.

Petition for Allowance of Appeal Granted Sept. 29, 1994.

Anne L. Crotty, Kittanning, for appellants.

Robert E. Pryde, Kittanning, for appellee.

Before ROWLEY, P.J., and CIRILLO, and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

There is one question presented here: Did the Daileys sign a contact under seal when they took a loan from Beneficial? If they did, Beneficial's action to enforce the agreement was timely. If they did not, the action is barred by the statute of limitations. We find that they signed a contract under seal and affirm the trial court.

▪ The Daileys borrowed $2,880.00 from Beneficial in 1985. When they signed the loan agreement—a pre-printed form used by Beneficial in all consumer loan transactions—the word "SEAL" was pre-printed to the right of their names. The Daileys defaulted on their loan payments in November, 1986. Four years and five months later, Beneficial brought this action to recover the balance of the loan. The trial court held that the evidence established that the Daileys signed a contract under seal, subjecting them to a 20-year statute of limitation. 42 Pa.C.S.A. § 5529(b)(1). The Daileys claim that they did not understand that they were signing a sealed agreement, and that the general four-year statute of limitation governing contracts, 42 Pa.C.S.A. § 5525(7), should apply. We disagree.

▪ It is well-established that, although a vestige of the past, the contract under seal may still operate to lengthen the statute of limitation. The Daileys argue forcefully—and we do

not think anyone would disagree—that an ordinary consumer transaction hardly represents the solemnity that was once envisioned by a party signing a contract under seal. Yet, this court has held, in accord with many cases written by our Supreme Court, that when a party signs a contract which contains a pre-printed word "SEAL," that party has presumptively signed a contract under seal. *Klein v. Reid,* 282 Pa.Super. 332, 422 A.2d 1143 (1980).

While we share the Daileys' concern, we do not feel that *Klein,* which was decided on similar facts, was necessarily unwise, for it too acknowledges that signing a pre-printed form only gives rise to a presumption that the signing party intended to adopt the seal as his own. *Id.* at 335, 422 A.2d at 1144. In *Klein,* we held that the signing parties "presented no evidence that that they did not intend to adopt the printed seal," and that without such evidence, it must be found that the parties did, in fact, adopt it. This holding is reasonable, since it gives effect to (1) the objective manifestations of the parties, and (2) our legislature's acknowledgment that the contract under seal is a valid type of risk-shifting agreement.[1]

The Daileys also argue that they rebutted the presumption that they intended to adopt the pre-printed word "SEAL" because they would not have signed the document had they understood the significance of signing a contract under seal.[2] Thus, the Daileys posit, the presumption was rebutted because they could not have intended to adopt something which they did not understand. This argument is flawed.

The Daileys argue against the face of the document, that is, their argument's essence is that they never entered into a contract under seal. The parol evidence rule precludes this contention because the four corners of the contract are unambiguous. Their agreement was, in fact and in law, a contract under seal. The only question remaining—the one addressed

---

**1.** At least until 1998, that is, when the statute of limitation with regard to contracts under seal expires. 42 Pa.C.S.A. § 5529(b)(2).

**2.** The trial court found as a fact that nobody explained the meaning of the seal to the Daileys and that had they understood its significance, they would not have signed.

by the presumption—is whether the word "SEAL" was intended to act as the Daileys' seal. Put another way, a pre-printed "SEAL" is always an effective way to seal a document unless the maker refuses to accept the pre-printed word as his seal. If for example, the Daileys could prove that they always sealed documents with wax and ribbons, and that their personal seal was absent from this document, they could admit their personal seal into evidence to prove their intention not to adopt the pre-printed word as their own. The rub in this scenario is that very few consumers have their own seals. But this does not prove that the Daileys could not intend to adopt the printed word as their own seal; it actually proves the opposite.

As our Supreme Court explained long ago:

[A]ny flourish or mark, however irregular or inconsiderable, will be a good seal, if so intended; and a fortiori, the same result must be produced by writing the word "seal," or the letters "L.S.," meaning originally "locus sigilli," but now having acquired the popular force of an arbitrary sign for a seal, just as the sign " & " is held and used to mean "and" by thousands who do not recognize it as the middle ages manuscript contraction for the Latin word "et." If, therefore, the word "seal" on the note in suit had been written by Nissley after his name, there could be no doubt about its efficacy to make a sealed instrument. Does it alter the case any that it was not written by him, but printed beforehand? We cannot see any good reason why it should. Ratification is equivalent to antecedent authority, and the writing of his name to the left of printed word, so as to bring the latter into the usual and proper place for a seal, is ample evidence that he adopted the act of the printer in putting it there for a seal. The note itself was a printed form with blank spaces for the particulars to be filled in, and the use of it raises a conclusive presumption that all parts of it were adopted by the signer except such as were clearly struck out or intended to be canceled before signing.

*Loraw v. Nissley,* 156 Pa. 329, 331–332, 27 A. 242, 242 (1893). The only way the presumption might possibly be rebutted,

according to the *Loraw* Court, would be if the maker signed the document, but signed it a considerable distance from the pre-printed seal. Even this would be a "special ground" upon which to rebut the presumption, *id.* at 333, 27 A. at 242, and given *Loraw*'s tone, we doubt that the Supreme Court would recognize it. *See Appeal of Hacker,* 121 Pa. 192, 15 A. 500 (1888) (no reason to believe that the "flourish of a pen" underneath a person's signature was not intended to act as a seal).

■ This might very well, as the Daileys' argue, render the presumption irrebutable. But this is not to say that the presumption is a meaningless fiction. It becomes important, for example, when a corporation, who has registered its corporate seal with the state, is sued on a contract signed by one of its officers. If the officer signs his name next to a pre-printed seal and the corporation's actual seal is absent from the document, legitimate questions regarding the authority of the officer to bind the corporation are raised. Did the corporation intend to adopt the pre-printed seal as its own? Although it is presumed that it did, ultimate resolution of the issue is a question of fact. *Collins v. Tracy Grill & Bar Corp.,* 144 Pa.Super. 440, 19 A.2d 617 (1941); *see Swaney v. Georges Township,* 309 Pa. 385, 164 A. 336 (1932) (municipality did not intend to adopt pre-printed seal where one of its supervisors signed document and municipality seal was absent). It would be difficult, of course, for a private party to argue that he had no authority to accept a seal on his own behalf, and this is probably why the *Loraw* Court termed the presumption conclusive, as it applied to that case. Such is also the case here.

Unless one distances himself from the pre-printed seal, the other party to a contract should be entitled to rely on the objective manifestations of the maker's actions. There can be no question that the pre-printed "SEAL" is an actual seal and that the Daileys signed next to it. The Daileys were under no duty to accept the seal, and had every opportunity to inquire about its significance, and signed the agreement freely. We

must therefore agree with the trial court that the obligation should be enforced.

Order affirmed.