67 A.3d 749

**OSPREY PORTFOLIO, LLC, as Successor to First Union National Bank, Appellee**

v.

**George IZETT, Appellant.**

Supreme Court of Pennsylvania.

Argued Nov. 28, 2012.

Decided May 28, 2013.

David L. Braverman, Philadelphia, Richard S. Julie, John Evan Kaskey, Philadelphia, Braverman Kaskey, P.C., for Appellant.

Anthony P. Tabasso, Klehr, Harrison, Harvey, Branzburg & Ellers, LLP, Philadelphia, for Appellee.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice SAYLOR.

Appeal was allowed to determine the limitation period that applies to an action on a guaranty executed under seal.

Appellant, in his capacity as vice-president of Izett Manufacturing, Inc., executed a guaranty in connection with a loan agreement entered into by the company. The loan agreement entitled Izett Manufacturing to borrow up to $50,000 and was secured by a promissory note. The note and the guaranty both were dated September 9, 1999, and, pursuant to the latter, Appellant personally guarantied the payment of all liabilities under the note, including attorney fees and other costs of collection. The guaranty included a confession of judgment clause and stated that it was "executed under seal," with the designation "(SEAL)" as part of the signature line. By 2001, the company had borrowed $50,000 under the agreement. At that time, Appellee Osprey Portfolio, LLC ("Osprey") purchased the loan and was assigned the note and guaranty. In late 2005, Osprey sent a letter to Izett Manufacturing, declaring the loan to be in default and demanding payment in full. The company failed to remit payment.

More than four years later, on June 15, 2010, Osprey filed a Complaint in Confession of Judgment against Appellant as the

guarantor of the loan. The court entered judgment the same day in the amount of $85,473.42, plus interest from March 31, 2010.[1] Thereafter, Appellant filed a Petition to Strike and/or Open Judgment, claiming, in relevant part, that Osprey's action was precluded by Section 5525(a)(8) of the Judicial Code, which establishes a four-year limitation period for

[a]n action upon a contract, obligation or liability founded upon a writing not specified in paragraph [ (a) ](7), under seal or otherwise, except an action subject to another limitation specified in this subchapter.

42 Pa.C.S. § 5525(a)(8).[2]

In arguing that no other limitation period controlled, Appellant anticipated that Osprey would rely upon Section 5529(b), which provides as follows:

(1) Notwithstanding section 5525[ (a) ](7) (relating to four year limitation), an action upon an instrument in writing under seal must be commenced within 20 years.

(2) This subsection shall expire June 27, 2018.

*Id.* § 5529(b). Appellant conceded that the guaranty was a writing under seal but maintained that it did not qualify as an instrument for purposes of Section 5529(b)(1). He asserted that the court should apply the definition of instrument found in Article 3 of the Uniform Commercial Code ("UCC"), which defines an instrument as "a negotiable instrument," *i.e.,* "an unconditional promise or order to pay a fixed amount of money." 13 Pa.C.S. § 3104(a), (b). The guaranty does not fall within this definition, Appellant contended, because the company's default is a precondition of Appellant's obligation, and the amount of money involved is not "fixed," as the note authorizes a loan of up to $50,000. In support of his position,

1. The $85,473.42 represents $50,000 in principal, as well as late charges, attorney fees, and interest through March 31, 2010, as requested in the complaint.

2. Section 5525(a)(7) pertains to

[a]n action upon a negotiable or nonnegotiable bond, note or other similar instrument in writing. . . .

42 Pa.C.S. § 5525(a)(7). Neither party argues that this subsection applies to the present facts.

Appellant cited *Cadle Co. v. Allshouse,* No. 2006–2023, *slip op.* (C.P. Westmoreland May 16, 2007), *aff'd,* 959 A.2d 455 (Pa.Super.2008) (table), in which the common pleas court, utilizing the UCC criteria, determined that an agreement for a line of credit did not qualify as an instrument under Section 5529(b)(1), because it was not for a fixed sum. Instead, the *Cadle* court applied the four-year period of Section 5525(a)(8), holding that the agreement was "a contract, obligation, or liability founded upon a written document." *Cadle,* No.2006–2023, *slip op.* at 5 (citing 42 Pa.C.S. § 5525(a)(8)).

The common pleas court denied Appellant's petition, explaining that, "[r]ead together, § 5525(a)(7), (8) and § 5529(b)(1) of the Judicial Code provide that certain instruments in writing which might otherwise be subject to a four-year statute of limitations are subject to a twenty-year statute of limitations if signed under seal." *Osprey Portfolio, LLC v. Izett,* No. 2010–07295, *slip op.* at 3 (C.P. Chester Mar. 1, 2011). Centrally, the court rejected Appellant's position predicated upon the UCC, observing that UCC Article 3 is specifically addressed to negotiable instruments, *see* 13 Pa.C.S. §§ 3101–3805; *see also id.* § 3102(a) ("This division applies to negotiable instruments."), and, further, that the Article 3 definition of instrument is limited to that division only, *see id.* § 3103(b) (including "instrument" in a list of "definitions applying to this division and the sections in which they appear"). The court distinguished *Cadle,* moreover, reasoning that that case involved a line of credit rather than a guaranty, and additionally noted that the intermediate court's decision in *Cadle* was nonbinding because it was unpublished. *See Osprey,* No.2010–07295, *slip op.* at 3–4.

In concluding that the guaranty qualified as an instrument for purposes of Section 5529(b), the court ascribed to "instrument" its ordinary meaning, *see* 1 Pa.C.S. § 1903(a) ("Words and phrases shall be construed … according to their common and approved usage"), namely, "[a] written document; a formal or legal document in writing, such as a contract, deed, will, bond or lease." *Osprey,* No.2010–07295, *slip op.* at 4–5 (quoting Black's Law Dictionary (5th ed.1979)). Recognizing

that the dictionary identifies a "negotiable instrument" as a type of instrument, the court developed that the ordinary meaning of "instrument" is broader than "negotiable instrument," and hence, even assuming the guaranty is not a negotiable instrument, this does not mean it is not an instrument. Additionally, the court observed that numerous reported Pennsylvania appellate decisions refer to a guaranty as an instrument, see id. at 4 (collecting cases), and that at least one federal court has found expressly that an action on a guaranty executed under seal is subject to the limitation period of Section 5529(b). *See id.* at 5 (citing *Marcucci v. H & L Developers, Inc.,* No. 08–5560, 2009 WL 5177767, at \*6 (E.D.Pa. Dec. 31, 2009)). Thus, the court held that Osprey's action was timely under Section 5529(b)'s 20–year limitation period. Accordingly, it denied Appellant's request to strike and/or open the judgment.

The Superior Court affirmed in a published opinion, using reasoning similar to that of the common pleas court. *See Osprey Portfolio, LLC v. Izett,* 32 A.3d 793 (Pa.Super.2011). The intermediate court chiefly cited the federal *Marcucci* case, as well as *In re Estate of Snyder,* 13 A.3d 509 (Pa.Super.2011), which employed a dictionary definition of instrument to conclude that Section 5529(b) subsumes mortgages and bond and warrant securities. In this regard, the Superior Court determined that the guaranty in issue also qualified as an instrument, pursuant to that term's ordinary meaning, "because it defines the rights, duties, entitlements, and liabilities of the parties involved." *Osprey,* 32 A.3d at 797 (citing BLACK'S LAW DICTIONARY 813 (8th ed.2004)).

As to Appellant's advancement of the UCC definition of instrument, the court observed that provisions of the UCC control only "to the extent that they are inconsistent with" Chapter 55 of the Judicial Code (relating to limitation of time). *Id.* at 798 (quoting 42 Pa.C.S. § 5501(b)) (emphasis and internal quotation marks omitted). The court reasoned that, as the Judicial Code does not define the term instrument, there could be no relevant provision of the Judicial Code in conflict with the UCC. Thus, the intermediate court concluded that the

UCC definition does not control and, as a result, disapproved of *Cadle.* Consequently, the Superior Court agreed with the common pleas court's determination that Osprey's action was timely, as it was brought within the 20–year period set forth in Section 5529(b)(1).

Judge Fitzgerald concurred in the result, adopting the rationale of the Commonwealth Court in *Township of Indiana v. Acquisitions & Mergers, Inc.,* 770 A.2d 364 (Pa.Cmwlth. 2001), which articulated its view of the relationship among Sections 5525(a)(7) and (8), and 5529(b), as follows:

> Based on a collective reading of these statutory provisions we conclude the following: (1) the four-year limitation period set forth in § 5525[ (a) ](7) applies to negotiable and nonnegotiable bonds, notes or other similar instruments in writing that are not under seal; (2) the 20–year limitation period set forth in § 5529(b)(1) applies to negotiable and nonnegotiable bonds, notes or other similar instruments in writing that are under seal; and (3) the four-year limitation period set forth in § 5525[ (a) ](8) applies to all contracts in writing that do not constitute negotiable or nonnegotiable bonds, notes or other similar instruments, irrespective of whether or not the contract is under seal.

*Osprey,* 32 A.3d at 799–800 (Fitzgerald, J., concurring) (emphasis omitted) (quoting *Twp. of Indiana,* 770 A.2d at 376). Judge Fitzgerald opined that the term "similar," as it appears in Section 5525(a)(7), restricts the meaning of "instrument" for purposes of Section 5529(b)(1). *See id.* at 798–99. To determine whether a guaranty was a sufficiently "similar instrument" to those writings enumerated in Section 5525(a)(7), Judge Fitzgerald considered the dictionary definitions of the terms bond, note, and guaranty and concluded that a guaranty—" 'an undertaking that a person will pay' "—is an instrument sufficiently similar to a bond or note, which are "written promises to pay money." *Id.* at 800 (quoting BLACK'S LAW DICTIONARY 773 (9th ed.2009), and citing *id.* at 200).

On appeal to this Court, Appellant renews his argument that UCC Section 3104(b) defines the term instrument for purposes of Section 5529(b)(1) of the Judicial Code, implying

that the provisions of the UCC are inconsistent with those of the Judicial Code in this regard. *See* 42 Pa.C.S. § 5501(b). Pursuant to the UCC definition, Appellant maintains, the guaranty is not an instrument because the loan was not for a fixed amount of money, but was more akin to a line of credit. Additionally, Appellant contends that giving "instrument" its ordinary meaning for Section 5529(b)(1) purposes would make that provision so broadly applicable as to render part of Section 5525(a)(8) inoperable. Specifically, he asserts that a definition such as that espoused by the common pleas and intermediate courts, encompassing *"any* written contract[,]" would negate the applicability of Section 5525(a)(8) vis-a-vis sealed documents, with the result that that subsection's exception for "action[s] subject to another limitation specified in this subchapter" would "swallow the rule," at least insofar as documents executed under seal are concerned. Brief for Appellant at 19, 20 (emphasis in original). In Appellant's view, "if the Legislature had intended every contract executed under seal to be governed by Section 5529, there would have been no reason for it to include the phrase 'under seal or otherwise' [in] Section 5525(a)(8)." *Id.* at 20 (emphasis omitted); *see also* 1 Pa.C.S. § 1922(2) (stating that, in identifying the intent of the Legislature, one may presume that "the General Assembly intends the entire statute to be effective and certain").

Finally, Appellant observes that the cases generally referring to guaranties as instruments, as cited by the common pleas court and Osprey, are not instructive, as they do not address the definition of the term instrument as used in the Judicial Code. In this regard, Appellant specifically distinguishes *Marcucci* and *Beneficial Consumer Discount v. Dailey,* 434 Pa.Super. 636, 644 A.2d 789 (1994), stating that the primary issue in those disputes was whether the writing was executed under seal, not which statute of limitation applied. *See* Reply Brief for Appellant at 6 (citing *Marcucci,* 2009 WL 5177767, at *6; *Dailey,* 644 A.2d at 790–91).

Consistent with Judge Fitzgerald's concurrence, Osprey counters that Section 5529(b)(1) applies to negotiable or non-

negotiable bonds, notes, or other similar instruments, executed under seal. *See* Brief for Appellee at 8; *id.* at 9 n. 2. Osprey notes, in this regard, that intermediate courts have applied the 20–year limitation period to various writings under seal, including deeds, *see Meadow Run/Mountain Lake Park Ass'n v. Bantell,* 985 A.2d 989 (Pa.Cmwlth.2009), and loan agreements, *see Dailey,* 434 Pa.Super. 636, 644 A.2d 789, and references decisions in which courts have, in general, referred to guaranties as instruments, *see* Brief for Appellee at 10 (collecting cases).

In disputing Appellant's definition of instrument as a negotiable instrument only, Osprey argues that the definitional criteria set forth in UCC Article 3 concern only whether a document is negotiable, and not whether it is an instrument. Osprey points out that, while Article 3 is concerned solely with negotiable instruments, Section 5525(a)(7) of the Judicial Code, by its terms, applies to negotiable and nonnegotiable writings. By extension, Osprey posits, "to accept [Appellant's] statutory construction would render half of § 5525 [ (a)(7) ] meaningless by omitting non-negotiable instruments from that section...." *Id.* at 13.

As a fallback position, Osprey reasons that, even if this Court finds that the statutes conflict, it can give effect to each by interpreting the Judicial Code sections to apply to instruments generally and UCC Section 3104 to address only negotiable instruments. Finally, Osprey proffers that Section 5529(b)(1), pertaining exclusively to instruments under seal, is more specific than UCC Section 3104, which governs negotiable instruments in general. Therefore, Osprey maintains that Section 5529(b)(1) should be given precedence.

 As this matter implicates an issue of statutory interpretation, "our task is to determine the will of the General Assembly using the language of the statute as our primary guide." *Shelly Funeral Home, Inc. v. Warrington Twp.,* 618 Pa. 469, 475, 57 A.3d 1136, 1139 (2012) (quoting *Mitchell Partners, L.P. v. Irex Corp.,* 617 Pa. 423, 433, 53 A.3d 39, 45 (2012)) (internal quotation marks omitted). The principal

interpretive inquiry regards the meaning of the term "instrument" as used in Section 5529(b)(1) and, in particular, whether it was intended to subsume a guaranty executed under seal. In advocating for use of the UCC definition of instrument, Appellant relies heavily on Section 5501(b) of the Judicial Code. Section 5501(b) specifies that the provisions of the UCC "shall control over the provisions of" Chapter 55 of the Judicial Code "to the extent that [the UCC provisions] are inconsistent with" those of Chapter 55. 42 Pa.C.S. § 5501(b).[3]

Here, the only potential inconsistency forwarded by Appellant pertains to each code's definition of instrument. As observed by the Superior Court, however, the Judicial Code does not define the term instrument, and hence, the two statutes do not manifest a direct inconsistency. More fundamentally, Article 3 is exclusively committed to negotiable instruments. *See, e.g.,* 13 Pa.C.S. § 3104, UCC Comment—1990, No. 1 ("The definition of 'negotiable instrument' defines the scope of Article 3 since Section 3–102 states: 'This Article applies to negotiable instruments.'"). It defines the term instrument for purposes of that division only, effectively utilizing the term as a shorthand for negotiable instrument. *See* 13 Pa.C.S. § 3104(b) ("'Instrument' means a negotiable instrument."). There is nothing to suggest that Section 5501 was intended to import such construct into Chapter 55 of the Judicial Code, particularly as the latter expressly refers to negotiable and nonnegotiable bonds, notes and "other similar instrument[s]." 42 Pa.C.S. § 5525(a)(7); *see supra* note 2. Moreover, Article 3 of the UCC has no application to this case, as the parties agree that the guaranty at the center of this controversy is not a negotiable instrument. Accordingly, Appellant cannot prevail on his assertion that the guaranty is not an instrument on the grounds that the UCC limits the term to negotiable instruments.

■ Because "instrument" is not defined by the Judicial Code, moreover, we agree with the common pleas court, the Superior Court, and Osprey insofar as each invokes the word's

---

3. Chapter 55 sets forth time limitations relative to actions, proceedings, and appeals. *See* 42 Pa.C.S. § 5501(a).

ordinary meaning. *See* 1 Pa.C.S. § 1903(a); *AMP Inc. v. Commonwealth,* 578 Pa. 366, 375 n. 4, 852 A.2d 1161, 1166 n. 4 (2004) ("When statutory words or phrases at issue are undefined by the statute, the Court construes the words according to their plain meaning and common usage.").[4] As commonly used in the legal context, the term "instrument" refers to a written document defining rights, duties, entitlements, or liabilities, such as a contract, will, promissory note, or share certificate. *See* BLACK'S LAW DICTIONARY 813 (8th ed.2004); WEBSTER'S NEW WORLD COLLEGE DICTIONARY 741 (4th ed.1999); *see also United States v. Int'l Longshoremen's Ass'n,* 518 F.Supp.2d 422, 465 (E.D.N.Y.2007) (stating that a "written instrument" is a "document evidencing legal rights or duties or giving formal expression to a legal act or agreement, such as a deed, will, bond, lease, insurance policy or security agreement") (internal quotation marks and citation omitted).

A written guaranty falls within this description. It is "a promise to pay the debt of another when the creditor is unable, after due prosecution, to collect the amount owed by the debtor." *Atalanta Corp. v. Ohio Valley Provision Co.,* 489 Pa. 389, 394, 414 A.2d 123, 126 (1980) *(plurality)* (citing *Strohecker v. Farmers' Bank of Reading,* 6 Pa. 41, 44, 6 Barr. 41, 44 (1847)).[5] That is, in essence, a guaranty is a document defining a guarantor's liability for another's debt and a creditor's concomitant right to recover from the guarantor if the debtor does not pay. Hence, it follows that a guaranty falls within the definition of instrument as that term is ordinarily

4. "Instrument" is also not among the various terms defined by the Statutory Construction Act. *See* 1 Pa.C.S. § 1991.

5. *Accord Dynegy Mktg. & Trade v. Multiut Corp.,* 648 F.3d 506, 519 (7th Cir.2011); *Movado Grp., Inc. v. Caseiko Trading Co.,* 912 F.Supp.2d 109, 115–16, 2012 WL 6135851, at *5 (S.D.N.Y.2012); *CapitalSource Fin., LLC v. Delco Oil, Inc.,* 608 F.Supp.2d 655, 662 (D.Md.2009); *Sunoco, Inc. (R & M) v. MX Wholesale Fuel Corp.,* 565 F.Supp.2d 572, 580–81 (D.N.J.2008); *Peoples Bank v. Frazee,* 318 S.W.3d 121, 133 (Mo.2010) *(en banc);* *Rodehorst v. Gartner,* 266 Neb. 842, 669 N.W.2d 679, 685 (2003). *See generally* BLACK'S LAW DICTIONARY 724 (8th ed.2004) (defining a guaranty as a "promise to answer for the payment of some debt, or the performance of some duty, in case of the failure of another who is liable in the first instance").

used in a legal context-and, by corollary, as it is used in Section 5529(b)(1).[6]

Moreover, there is no dispute that the guaranty signed by Appellant denominates the parties' rights, duties, entitlements, and/or liabilities. In particular, it sets forth Appellant's legal obligation to pay the loan principal and related charges in the event of a default and, correspondingly, the loan holder's right to obtain payment. *See* Guaranty dated Sept. 9, 1999 at 1, *reproduced in* R.R. 31a ("[Appellant] hereby absolutely, irrevocably and unconditionally guarantees to [the loan holder] the timely payment and performance of all liabilities and obligations of [the borrower to the loan holder] . . . ."); *id.* at 3, *reproduced in* R.R. 33a ("If a Default occurs, the Guaranteed Obligations shall be due immediately and payable without notice, and, [the loan holder] may exercise any rights and remedies as provided in this Guaranty. . . . ").[7]

6. Notably, guaranties are often, as here, executed as part of an arrangement involving consideration such as the loan proceeds or a promise to lend money. *See, e.g., Harr v. Perkins*, 335 Pa. 186, 189, 6 A.2d 534, 536 (1939) (stating that, where the guaranty is executed contemporaneously with the principal transaction, a court may infer consideration supporting the guaranty). As such, guaranties have historically been referred to as "contracts of guaranty," and have been subject to contract principles. *See, e.g., JPMorgan Chase Bank, N.A. v. Specialty Restaurants, Inc.*, 243 P.3d 8, 12 (Okla.2010) ("Generally, the promise to stand for the debt of another is purely contractual. . . ."); *Moorcroft State Bank v. Morel*, 701 P.2d 1159, 1161 (Wyo.1985) ("The law of guaranty is part of general contract law."); *accord Perkins*, 335 Pa. at 189, 6 A.2d at 536 (invoking general rules of contract law to examine a "contract of guaranty") (citation and internal quotation marks omitted). *See generally* 38A C.J.S. *Guaranty* § 2. In this sense, guaranties have, in effect, been viewed as a species of contract. That the definition of instrument expressly subsumes contracts as a representative example, therefore, buttresses our present determination that a guaranty is a type of instrument.

7. With regard to the present inquiry, it is also relevant that Section 5529(b) applies exclusively to written instruments "under seal." 42 Pa.C.S. § 5529(b)(1). The practice of affixing seals to writings originated at common law to give legal effect to promises and agreements. *See* 78A C.J.S. *Seals* § 1 ("The purpose of a seal is to attest in a formal manner to the execution of an instrument. . . ." (footnote omitted)); E. Allan Farnsworth, *Promises and Paternalism*, 41 Wm. & Mary L.Rev. 385, 392 (2000) ("[C]ourts used the formality of the seal to distinguish those promises that were binding . . . from those that were not."); *accord* Eric Mills Holmes, *Stature and Status of a Promise Under Seal as a*

Appellant raises a pertinent concern that a holding in Osprey's favor could deprive Section 5525(a)(8) of some effect, as Section 5529(b)(1) would preempt its application to writings under seal notwithstanding Section 5525(a)(8)'s facial applicability to a certain category of writings "under seal or otherwise." 42 Pa.C.S. § 5525(a)(8). Notably, however, Section 5525(a)(8) expressly contemplates that it will be overridden in some instances, as it contains an exception for "action[s] subject to another limitation specified in this subchapter." *Id.* Significantly, as well, any such eclipsing of Section 5525(a)(8) is, by design, temporary, as Section 5529(b) expires on a date certain. *See id.* § 5529(b)(2) (stating that the subsection expires June 27, 2018). Hence, Section 5529(b)(1) does not negate Section 5525(a)(8)'s application to instruments executed under seal in an absolute sense. *Accord Malta v. Schulmerich Carillons, Inc.*, Civ. A. No. 85–5330, 1988 WL 81723, at *1 (E.D.Pa. Aug. 3, 1988) (explaining that the four-year limitation period of Section 5525(a)(8) will apply to contracts executed under seal after Section 5529(b)'s expiration). This facet of the legislative landscape ameliorates any concern that our present interpretation might be inconsistent with the recognized precept that the Legislature intends all portions of the statute to be given effect. *See* 1 Pa.C.S. § 1922(2).[8]

*Legal Formality*, 29 WILLAMETTE L.REV. 617, 629 (1993) ("In the early stages of English law, the King's courts did not bind parties to an agreement unless the terms of the agreement were put into a written document[,] ... which required a seal to make it formal...."). Accordingly, by employing the phrase, "instrument in writing under seal," Section 5529(b) correlates with the utilization of seals at common law relative to writings setting forth rights and/or obligations.

Likewise, payment on an instrument executed under seal was presumed at common law after the passage of 20 years. *See City of Phila. v. Lieberman*, 112 F.2d 424, 427 (3d Cir.1940); *Transbel Inv. Co. v. Scott*, 344 Pa. 544, 546, 26 A.2d 205, 207 (1942); *In re Conrad's Estate*, 333 Pa. 561, 565, 3 A.2d 697, 700 (1938). *See generally In re Weizenbaum's Estate*, 414 Pa. 462, 465–66, 200 A.2d 878, 879–80 (1964). Thus, Section 5529(b) appears designed to preserve that same time period, albeit while replacing an obligor's presumption of payment with a limitation on an obligee's cause of action.

8. While the analysis of Judge Fitzgerald and, by extension, the Commonwealth Court in *Township of Indiana*, would seem to harmonize the various statutory sections, such a reading would restrict the term

Accordingly, we hold that the loan guaranty executed under seal by Appellant is an "instrument in writing under seal" subject to the 20–year limitation period set forth in Section 5529(b)(1) of the Judicial Code.

The order of the Superior Court is affirmed.

Former Justice ORIE MELVIN did not participate in the consideration or decision of this case.

Chief Justice CASTILLE, Justice EAKIN and BAER, Justice TODD and Justice McCAFFERY join the opinion.

instrument as it is used in Section 5529(b)(1) to bonds, notes, and other similar writings, a limitation that does not appear on the face of the statute.