**Brett C. BALDELLI, Petitioner**

v.

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 7, 2013.

Decided July 31, 2013.

Scott B. Rudolf, Assistant Appellate Defender, Pittsburgh, for petitioner.

Chad L. Allensworth, Assistant Counsel, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, SIMPSON, Judge, and COLINS, Senior Judge.

OPINION BY Judge SIMPSON.

Brett C. Baldelli (Baldelli) petitions for review of an order of the Pennsylvania Board of Probation and Parole (Board) that recommitted him to a state correctional institution (SCI) based on his admission to two technical parole violations. Baldelli asserts the Board abused its discretion by recommitting him to an SCI rather than diverting him to a community corrections center (CCC) as required by statute. *See former* Section 6138(c)(6) of the Prisons and Parole Code, 61 Pa.C.S. § 6138(c)(6) [1] (Parole Code). Baldelli also argues the Board abused its discretion in failing to hold a hearing on his claim that he waived his right to a parole violation hearing and admitted to the technical violations in exchange for his parole agent's "off-the-record" promise that the waiver and admissions would result in placement in a CCC. After review, we affirm.

## I. Factual and Procedural Background

In 2008, Baldelli received a sentence of three to six years imprisonment based on

---

**1.** Section 6138(c)(6) was added by the Act of October 27, 2010, P.L. 931. It was deleted, and replaced with a similar, but not identical Section 6138(c)(1)(v) by the Act of July 5, 2012, P.L. 1050. There is no dispute that former Section 6138(c)(6) was in effect at the relevant times in this case.

his guilty plea to the manufacture/sale/delivery or possession with intent to deliver a controlled substance. Pursuant to that sentence, Baldelli's maximum sentence date was May 31, 2013.

In May 2009, the Board paroled Baldelli to the community corrections program at Penn Pavilion. Baldelli completed the program at Penn Pavilion and was successfully discharged.

However, less than a year later, Baldelli tested positive for opiates, which led to increased reporting requirements. Thereafter, in late 2010, the Board recommitted Baldelli as a technical parole violator based on his admission to violations of several parole conditions, including use of drugs, possession of drugs, possession of a weapon, and possession of drug paraphernalia.

Two months later, in early 2011, the Board re-paroled Baldelli to a CCC. Less than a year later, Baldelli tested positive for opiates, which again led to increased reporting requirements. Shortly thereafter, Baldelli attempted to submit a false urine sample, and he admitted to continued drug use. As a result, the Board placed Baldelli into an inpatient drug treatment program, and it imposed a special condition on Baldelli that he complete the program.

While at the inpatient drug treatment facility, Baldelli tested positive for synthetic marijuana. As a result, the facility discharged Baldelli based on his failure to successfully complete the program. The Board then detained Baldelli and charged him with two technical parole violations, use of drugs and failure to successfully complete the inpatient drug treatment program. Baldelli admitted to parole agents that he used synthetic marijuana while at the inpatient drug treatment facility.

Shortly thereafter, Baldelli executed waivers of a preliminary hearing, a panel hearing and representation by counsel. Baldelli also signed a "Waiver of Violation Hearing and Counsel/Admission Form," in which he "knowingly, voluntarily and willingly" admitted to the two technical parole violations charged. Certified Record (C.R.) at Item # 7. On the form, Baldelli indicated he waived his rights to a preliminary hearing, a violation hearing and his right to counsel at those hearings, "of [his] own free will, without any promise, threat or coercion." *Id.* In the space provided on the form, Baldelli stated, "I would like to request [CCC placement]. . . . I have a job to get back to and need the treatment they provide there. I have a drug problem and really want to get it right this time. Thank you." *Id.* Baldelli had 10 days to withdraw his admission to the parole violations, but he did not do so.

Based on Baldelli's admissions, the Board recommitted him as a technical parole violator to serve his unexpired term of one year, three months and seventeen days in an SCI. The Board's decision stated that diverting Baldelli from confinement posed an undue risk to public safety. Despite his recommitment, Baldelli's maximum sentence date remained May 31, 2013.

Baldelli filed an uncounseled administrative appeal, objecting to the Board's decision recommitting him to an SCI rather than diverting him to a CCC based on his technical parole violations. Baldelli also asserted that he only executed the waiver and admission form in exchange for his parole agent's promise that if he did so he would be placed in a CCC. The Board denied Baldelli's administrative appeal. Baldelli, representing himself, filed a petition for review with this Court. This Court appointed counsel on Baldelli's behalf.

After the filing of Baldelli's petition for review, and the submission of briefs by the

parties, Baldelli's maximum sentence date expired. As a result, on June 6, 2013, this Court issued a rule to show cause why this matter should not be dismissed as moot.

Baldelli's appointed counsel filed a response, objecting to dismissal of the case as moot. Despite conceding the case is, in fact, moot based on the passage of Baldelli's maximum sentence date, appointed counsel asserted the case presents an issue of great public importance as well as an issue that is capable of repetition yet evading review. Specifically, appointed counsel argued this case presented an issue of first impression involving the interpretation of former Section 6138(c)(6) of the Parole Code (which was similar to current Section 6138(c)(1)(v)), which required the Board to divert technical parole violators from confinement in an SCI unless such diversion posed an undue risk to public safety. Therefore, appointed counsel asserted this Court should decide this case on the merits. This Court subsequently issued an order discharging the rule. This matter is now before us for disposition on the merits.

## II.  Issues

On appeal,[2] Baldelli raises two issues. He contends the Board abused its discretion when it: (1) recommitted him to an SCI rather than diverting him to a CCC based on its conclusion that his mere consumption of drugs while on parole rendered him an undue risk to public safety, *see former* 61 Pa. C.S. § 6138(c)(6); and, (2) failed to hold a hearing on his claim that he waived his right to a parole violation hearing in exchange for an off-the-record promise by his parole officer that

the waiver would result in placement in a CCC.

## III.  Discussion

### A.  Former Section 6138(c)(6) of the Parole Code

■  Baldelli contends his first claim— that he was erroneously recommitted to an SCI rather than diverted to a CCC—is based on 61 Pa.C.S. § 6138(c)(6).

■  Here, Baldelli argues, it is undisputed that he was a technical parole violator. However, the Board recommitted him to an SCI rather than a diversion program because, according to the Board, his diversion would pose "an undue risk to public safety." Pet'r's Br. at 13. Baldelli asks: What was the evidence of this risk to public safety? His mere consumption of drugs while on parole. Baldelli argues drug consumption is, in and of itself, insufficient to establish the threat to public safety contemplated by Section 6138(c)(6). Absent evidence that he was assaultive, possessed a weapon, committed sex offenses, drove drunk or engaged in similarly dangerous behaviors, the Board could not recommit him to an SCI. Mere drug consumption does not, by itself, make one a threat to public safety; the Board erred when it held otherwise.

In explaining the deference traditionally afforded to the Board in parole matters, this Court stated (with emphasis added):

It is beyond dispute that a prisoner enjoys no right to release from confinement on parole prior to the expiration of his sentence's maximum term. We have also recognized the highly subjective nature of the parole release decision, *the highly specialized expertise of the Board*

---

**2.**  Our review is limited to determining whether constitutional rights were violated, whether the adjudication was in accordance with law, and whether necessary findings were supported by substantial evidence. 2 Pa.C.S. § 704; *Adams v. Pa. Bd. of Prob. & Parole,* 885 A.2d 1121 (Pa.Cmwlth.2005).

*in evaluating such matters, and the broad grant of discretion vested in the Board in parole matters by the General Assembly.* We have previously stated that the judiciary will not review the Board's exercise of its discretion when it acts on a parole application, *nor will we substitute judicial discretion for administrative discretion in parole matters.* Green v. Pa. Bd. of Prob. & Parole, 101 Pa.Cmwlth. 132, 515 A.2d 1006, 1009 (1986) (citations omitted).

■ Further, in reviewing the Board's discretionary acts, this Court will only overturn the Board's actions where the Board acts in bad faith, fraudulently, capriciously or commits an abuse of its power. *Chapman v. Pa. Bd. of Prob. & Parole,* 86 Pa.Cmwlth. 49, 484 A.2d 413 (1984). "Due to the broad discretionary powers granted the Board, we will only find that the Board made an arbitrary, capricious or unreasonable determination in the absence of substantial evidence in the record to support that determination." *Id.* at 418.

■ Former Section 6138(c)(6) of the Parole Code stated, "The [B]oard *shall* divert technical parole violators from confinement in a State correctional institution *unless the parolee's diversion poses an undue risk to public safety." Former* 61 Pa. C.S. § 6138(c)(6) (emphasis added). Thus, pursuant to this Section the Board retained discretion *not* to divert technical parole violators from SCIs where such diversions posed an undue safety risk. As a result, the Board's decision regarding diversion necessarily contains a discretionary component. *See Dickerson v. Pa. Dep't of Prob. & Parole,* 2011 WL 10844391 (Pa.Cmwlth., No. 947 M.D.2010, filed July 12, 2011) (unreported) (explaining that 6138(c)(6) of the Parole Code vests the Board with discretion not to divert technical parole violators from SCIs where such diversions pose an undue safety risk).[3] Indeed, Baldelli does not seriously contend otherwise. *See* Pet'r's Reply Br. at 8 ("§ 6138(c)(6) established a form of *guided discretion,* with recommitment barred absent a *proper* finding of an undue safety risk just as much as 42 Pa.C.S. § 9771(c) restricts the discretion of probation judges to commit probation violators."[4]) (Underlined emphasis added).

In its recommitment order here, the Board stated: "The Board finds that diverting you from confinement at this time poses an undue risk to public safety." C.R. at 32. In light of Baldelli's problematic history while on parole, we discern no abuse of discretion in the Board's finding that diversion from an SCI posed an undue risk to public safety.

More particularly, after his *first* release on parole, to a community corrections program in 2009, the Board recommitted Baldelli on several technical parole violations: (1) use of drugs; (2) possession of drugs; (3) possession of a weapon; and, (4) possession of drug paraphernalia. C.R. at 9.

---

3. Although *Dickerson v. Pennsylvania Department of Probation & Parole,* 2011 WL 10844391 (Pa.Cmwlth., No. 947 M.D.2010, filed July 12, 2011) is distinguishable because it involved an inmate's improperly filed mandamus suit, the above language from that decision is helpful. Section 414 of this Court's Internal Operating Procedures authorizes the citation of unreported panel decisions issued after January 15, 2008, for their persuasive value, but not as binding precedent. 210 Pa.Code § 69.414.

4. Similarly, in reviewing a trial court's sentence of total confinement imposed following a revocation of probation under 42 Pa.C.S. § 9771(c), the Superior Court reviews such a decision for abuse of discretion. *Commonwealth v. Crump,* 995 A.2d 1280 (Pa.Super.2010).

Baldelli admitted these violations. *Id.*[5]

Two months later, the Board *re-paroled* Baldelli to a CCC. *Id.*; C.R. at 12. Less than a year later, Baldelli tested positive for opiates. C.R. at 17. A week later, he attempted to submit a falsified urine specimen. *Id.* Baldelli was then placed into an inpatient drug treatment program at Penn Pavilion. *Id.*

About two months later, while at Penn Pavilion, Baldelli tested positive for synthetic marijuana. *Id.* As a result, Penn Pavilion discharged Baldelli based on his failure to successfully complete the program. *Id.*; C.R. at 20.

As a result, the Board charged Baldelli with two technical parole violations: failure to successfully complete the inpatient drug treatment program and use of drugs. C.R. at 18. Baldelli admitted these violations. C.R. at 27.

Ultimately, the Board recommitted Baldelli to an SCI based on these two technical parole violations. C.R. at 32. The Board's decision states: "REASON: NOT AMENABLE TO PAROLE SUPERVISION. PRIOR PAROLE/PROBATION FAILURE. FAILURE TO COMPLY WITH SANCTIONS. VIOLATIONS ESTABLISHED." *Id.*

In sum, in the period after his first release on parole, Baldelli admitted to multiple technical parole violations, including possession of a weapon.[6] C.R. at 9. Fur-

ther, after the Board re-paroled Baldelli to a CCC, he tested positive for drugs and attempted to submit a falsified urine specimen, leading the Board to characterize his adjustment after his release on re-parole as "poor." C.R. at 17. Additionally, after the Board placed Baldelli into an inpatient drug treatment program, he admitted to using synthetic marijuana and was discharged from the program prior to successful completion. As a result, the Board decided to recommit Baldelli to an SCI rather than divert him to a CCC.

In light of the above circumstances, we discern no abuse of discretion in the Board's decision to recommit Baldelli to an SCI, rather than re-releasing him to a CCC, based on his most recent admitted technical parole violations. Given Baldelli's history of parole failure, we cannot say the Board abused its discretion in determining that diverting Baldelli from an SCI would pose an undue risk to public safety. Indeed, the record of this history belies Baldelli's claim that the Board lacked evidence supporting its determination that Baldelli posed an undue risk to public safety.

Moreover, we reject Baldelli's attempt to analogize this case to our decision in *Duncan v. Pa. Board of Probation and Parole*, 687 A.2d 1179 (Pa.Cmwlth.1997). There, we considered whether the Board abused its discretion in deviating from the

---

5. The Board's "Supervision History" documented the nature of the events giving rise to these technical parole violations as follows: On 10/5/10, the offender reported to the Beaver Falls Sub-Office to provide a urine sample. He provided a sample that tested positive for Benzodiazepine. The offender admitt[ed] to taking a valium pill, which was not prescribed to him. The offender was detained and his vehicle was searched. The search produced several hypodermic needles, several Suboxone pills and a large hunting knife....

Certified Record (C.R.) at 17. Additionally, the Board's "Supervision History" for Baldelli documents at least five failed drug tests during the less than three-year period after his initial release on parole. *Id.*

6. In his brief, Baldelli asserts he has "no history of weapons possession." Pet'r's Br. at 17. Contrary to this assertion, the record reveals Baldelli admitted to possession of a weapon while on parole. C.R. at 9.

presumptive range when it assessed backtime against a parolee. Specifically, the Board imposed 48 months' backtime against a parolee based on the parolee's *single* technical parole violation of using drugs, a charge that carried a presumptive range of only five to twelve months. We determined the Board did not provide sufficient aggravating reasons for its significant deviation from the presumptive range. Further, the record lacked evidence that the parolee was a danger to society or engaged in any violent behavior while on parole. The parolee's drug use alone did not justify such a deviation from the presumptive range.

Here, unlike in *Duncan,* we are not confronted with a case in which the Board imposed backtime that greatly exceeded the presumptive range without adequately explaining its basis for doing so. Rather, this case concerns a challenge to the Board's decision to recommit a serial violating re-parolee to an SCI rather than to divert him again to a CCC. Further, unlike in *Duncan,* and as described in detail above, the record here supports the Board's determination that Baldelli's diversion to a CCC posed an undue risk to public safety in light of Baldelli's history of parole failure, which, in addition to numerous drug violations, included possession of a weapon. Thus, we reject Baldelli's reliance on *Duncan.*

### B. Hearing Request on "Extra–Record Promise"

■ In his second issue, Baldelli challenges the Board's refusal to grant him an evidentiary hearing. Baldelli acknowledges he waived his rights to both a pre-liminary and final parole violation hearing, as well as his right to hearing counsel, and was found to be a technical parole violator based on the allegations of his parole agent. Baldelli asserts that in his administrative appeal he argued that he waived these rights in exchange for the promise that he would, upon being found to be a technical violator, be placed into a CCC. He contends this contention was an extra-record claim as there was nothing in the record regarding the alleged promise. As such, Baldelli maintains, this claim should have resulted in an evidentiary hearing, just as extra-record averments regarding the custodial nature of a halfway house, the untimeliness of a violation hearing or the ineffectiveness of counsel warrant such hearings. Nevertheless, Baldelli argues, the Board denied relief, thereby depriving him of the ability to present and support his claim of error.[7]

In resolving this issue, our prior decisions in *Prebella v. Pa. Board of Probation and Parole,* 942 A.2d 257 (Pa.Cmwlth. 2008) and *McKenzie v. Pa. Board of Probation and Parole,* 963 A.2d 616 (Pa. Cmwlth.2009) are instructive. In those cases, we upheld the same uncounseled written waivers at issue here despite the parolees' claims that they executed the waivers and admitted to the violations in exchange for promises of placement into a diversionary program or re-parole.

First, in *Prebella,* we considered a parolee's challenge to the legality and constitutionality of the Board's waiver of violation hearing and admission form. There, in both his administrative appeal and in his petition for review to this Court, the parolee asserted in a verified statement that the

---

**7.** In his petition for review, Baldelli asserted he waived his right to a hearing and admitted to the violations in exchange for the promise that he would be released to a CCC. However, Baldelli did not indicate that he sought an evidentiary hearing to develop this issue; rather, he asked this Court to issue an order requiring the Board to "adhere to the agreement he entered into." Pet'r's Pet. for Review and Writ of Mandamus, filed 7/31/12, at 4.

Board's staff misled or coerced him into executing the violation hearing waiver and admitting the violations. The parolee alleged he waived these rights in exchange for a promise that he would be placed into the "Half–Way Back Program." *Id.* at 259. In rejecting the parolee's challenge to the waiver and admission form, we explained (with emphasis added):

[C]ontrary to [the parolee's] arguments, the Board's regulations specifically envision waivers by parolees accused of violations, including waiver of a violation hearing.

Further, and also contrary to [the parolee's] arguments, Pennsylvania law clearly supports the type of waivers executed here. *In order to effectuate a knowing and voluntary waiver in Parole Board cases, all that is required is for the Board to show that it followed its own regulations and provided the necessary information to the offender prior to the offender signing the written waiver form. The waiver need not be effectuated in an 'on the record colloquy.' Rather, as here, execution of the Board's form is sufficient. ...*

In addition, and also contrary to [the parolee's] contentions, *the violation hearing waiver form here reflects [the parolee] voluntarily, knowingly and intelligently waived his right to a violation hearing and admitted the parole violations. ... Although [the parolee] now alleges Board staff induced him to waive his violation hearing by promising to return him to a 'half-way back' program, his statements are contrary to his signed statements of record.* Moreover, he never sought to withdraw his admissions although advised of his right to do so.

Further, [the parolee] specifically admitted [to the charged violations]. Indeed, he does not claim innocence. Considering the foregoing, the record supports the Board's final decision that

[the parolee] 'voluntarily admitted to violating the conditions indicated.' Therefore, the Board did not abuse its discretion by recommitting [the parolee] based on his admission of the two technical parole violations.

In sum, [the parolee] relinquished his right to a violation hearing. It was only after that opportunity passed and he was disappointed in the result that *he sought to raise new facts contrary to those he previously put in the record. Essentially, he seeks to impeach himself and to obtain a different disposition* far below the presumptive range. *Because there is no support for such an outcome in the case law, in the regulations or in the record, we affirm.*

*Id.* at 261–62 (citations omitted).

Thereafter, in *McKenzie,* we considered a parolee's contention that his parole agent coerced him into waiving his right to a parole violation hearing and admitting to the violations by convincing the parolee that he would be re-paroled if he waived these rights. On the waiver and admission form, the parolee waived his right to a hearing, admitted the violations and expressed a preference for "a prison program if re-paroled." *Id.* at 617. On appeal, the parolee argued that, despite his waiver and admissions, the Board violated his right to due process by failing to conduct a final fact-finding hearing. Rejecting this claim, we stated (with emphasis added):

[The parolee] does not explain how the evidentiary value of his admission was adversely affected by the Board's procedures. To that end, [the parolee] does not claim that he is innocent of the parole violation or that he sought to rescind his admission.

Similarly, [the parolee] does not suggest a hearing is required to determine whether there are unknown mitigating circumstances which could persuade the

Board that recommitment is not an appropriate course despite his most recent three program failures. He makes no offer of proof relating to the sanction.

> *Furthermore, in the Waiver of Violation and Admission Form, [the parolee] acknowledged in writing that he understood his right to a preliminary hearing and a violation hearing, and that he waived this right 'of my own free will, without promise, threat or coercion.' [The parolee] now claims this is inaccurate. As a result, the factual issue [the parolee] wishes to pursue is self-impeachment. Board regulations do not require a hearing for this purpose.*

*Id.* at 619.

Like the parolees in *Prebella* and *McKenzie*, Baldelli executed a waiver of violation hearing and counsel and admission form, in which he "knowingly, voluntarily and willingly" admitted to the two parole violations charged. C.R. at Item # 7. On the form, Baldelli indicated he waived his rights to a preliminary hearing, a violation hearing and his right to counsel at those hearings, "of [his] own free will, *without any promise, threat or coercion.*" *Id.* (emphasis added). In the space provided on the form, Baldelli stated, "I would like to request [CCC placement].... I have a job to get back to and need the treatment they provide there. I have a drug problem and really want to get it right this time. Thank you." *Id.* Baldelli did *not* state that he agreed to waive his rights and admit to the violations in exchange for his parole agent's promise that he would be placed in a CCC. *Id.* Further,

Baldelli had 10 days to withdraw his admission to the parole violations, and he did not do so. *Id.*

Like the parolees in *Prebella* and *McKenzie*, Baldelli does not now claim that he seeks an evidentiary hearing based on a claim of innocence. Rather, like the parolees in *Prebella* and *McKenzie*, Baldelli seeks a hearing so that he may impeach his prior signed statements. Because Board regulations do not require such a hearing, *McKenzie*, we reject Baldelli's assertion that a hearing is required for this purpose. *See also Smith v. Pa. Bd. of Prob. & Parole*, 2010 WL 9511413 (Pa. Cmwlth., No. 1042 C.D.2009, filed February 9, 2010) (unreported), slip op. at 4 ("[The parolee] now contends that ... [his] admission was induced by the parole agent's representation.... Like the inmate in *Prebella*, [the parolee's] claim of coercion or false promise is contrary to his signed statements.... The record supports the Board's final decision, and the Board did not abuse its discretion in recommitting [the parole] based on his admission of the two technical violations."); *Smith v. Pa. Bd. of Prob. & Parole*, 2009 WL 9098312 (Pa.Cmwlth., No. 1903 C.D. 2008, filed March 31, 2009) (unreported), slip op. at 6 ("This Court holds that a recommitted parolee will not be afforded a second fact-finding procedure so that he may impeach his prior evidence.")[8]

Further, contrary to Baldelli's assertions, the requested hearing at which Baldelli seeks to impeach his prior statements, is clearly distinct from those situations in which hearings were required to

---

8. Also, as the Board correctly points out, this case is distinguishable from *Brown v. Pennsylvania Board of Probation & Parole*, 821 A.2d 170 (Pa.Cmwlth.2003). There, a parolee agreed to admit to a parole violation in exchange for placement into a drug treatment program as well as an agreement that a second charged parole violation would not be

pursued. The record in *Brown* included the testimony of the parolee and his parole agent, as well as an affidavit from the parolee's counsel, which indicated that, in order to be considered for the drug treatment program, the parolee had to admit to the violation. Ultimately, this Court concluded the Board should have vacated the parolee's admissions

determine: (1) whether a residential drug treatment program constituted the equivalent of prison incarceration;[9] (2) whether a parolee's parole violation hearing counsel was ineffective;[10] (3) whether a parole revocation hearing was timely;[11] or, (4) if a probation violator received notice of a violation hearing or the charges against him.[12] Nor is this a case in which a remand is required to enable an unrepresented parolee to file an appeal from a Board revocation decision with the aid of appointed counsel.[13] Indeed, Baldelli proceeded with appointed counsel before this Court. As discussed above, the factual issue Baldelli wishes to pursue is limited to self-impeachment. He is not entitled to a hearing for this purpose. *McKenzie.*

Based on the foregoing, we affirm.

### ORDER

**AND NOW,** this 31st day of July, 2013, the order of the Pennsylvania Board of Probation and Parole is **AFFIRMED.**

and held a full hearing on the charged violations. Because the parolee admitted to the violations with the understanding that he would be placed into the drug treatment program, we determined the parolee did not knowingly and voluntarily waive his right to a hearing before the Board.

Here, unlike in *Brown,* the record does not indicate that Baldelli was forced to admit to the parole violations charged. Rather, like the parolee in *McKenzie v. Pennsylvania Board of Probation and Parole,* 963 A.2d 616 (Pa.Cmwlth.2009), Baldelli signed three different waiver forms, each time agreeing his waiver was voluntary and without promise, threat or coercion. Baldelli also signed a written admission to the charged violations "knowingly, voluntary and willingly." C.R. at Item # 7. In *Brown,* there is no indication the parolee executed these written waivers

and admissions. *See Smith v. Pa. Bd. of Prob. & Parole,* 2010 WL 9511413 (Pa.Cmwlth., No. 1042 C.D.2009, filed February 9, 2010) (unreported) (distinguishing *Brown* on similar grounds).

9. *Meehan v. Pa. Bd. of Prob. & Parole,* 783 A.2d 362 (Pa.Cmwlth.2001).

10. *Larkin v. Pa. Bd. of Prob. & Parole,* 124 Pa.Cmwlth. 184, 555 A.2d 954 (1989).

11. *Jacobs v. Pa. Bd. of Prob. & Parole,* 958 A.2d 1110 (Pa.Cmwlth.2008).

12. *Commonwealth v. Ziegler,* 286 Pa.Super. 26, 428 A.2d 220 (1981); *Commonwealth v. Ruff,* 272 Pa.Super. 50, 414 A.2d 663 (1979).

13. *Bronson v. Pa. Bd. of Prob. & Parole,* 491 Pa. 549, 421 A.2d 1021 (1980).