**Barry HARMER, Petitioner**

v.

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 11, 2013.

Decided Jan. 7, 2014.

Reargument Denied March 7, 2014.

---

Barry Harmer, pro se.

John J. Talaber, Assistant Counsel, Harrisburg, for respondent.

BEFORE: PELLEGRINI, President Judge, and McGINLEY, Judge, and LEADBETTER, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and LEAVITT, Judge, and BROBSON, Judge.

OPINION BY Judge SIMPSON.

Barry Harmer (Harmer), representing himself, petitions for review of an order of the Pennsylvania Board of Probation and Parole (Board) that recommitted him to a state correctional institution (SCI) to serve six months' backtime based on his admission to three technical parole violations. Primarily, Harmer challenges the Board's decision to recommit him to an SCI rather than diverting him to a community corrections center (CCC) as required by statute. *See former* Section 6138(c)(6) of the Prisons and Parole Code, 61 Pa.C.S. § 6138(c)(6)[1] (Parole Code). Because the record amply supports the Board's discretionary determination that diverting Harmer to a CCC poses an undue risk to public safety, we affirm.

In 1996, Harmer received a sentence of 5 to 27 years imprisonment based on his guilty pleas to theft and multiple counts of burglary. Pursuant to that sentence, Harmer's minimum sentence date was October 5, 2000 and his maximum sentence date was January 4, 2023.

The Board granted Harmer parole in 2000. At that time, the Board released Harmer to a New Jersey detainer.

About six months later, the Board declared Harmer delinquent on parole. The Board subsequently recommitted Harmer as a technical parole violator based on his admission to four technical parole violations, which included using drugs, leaving the district without permission, failing to report per written instructions and failing to attend an outpatient drug treatment program.

---

1. Section 6138(c)(6) was added by the Act of October 27, 2010, P.L. 931. It was deleted, and replaced with a similar, but not identical Section 6138(c)(1)(v) by the Act of July 5, 2012, P.L. 1050, which became effective January 2, 2013. There is no dispute that former Section 6138(c)(6) was in effect at all relevant times in this case.

In 2003, the Board re-paroled Harmer to a CCC. About three years later, the Board again declared Harmer delinquent on parole. Thereafter, the Board recommitted Harmer as a technical parole violator.

In early 2007, the Board again granted Harmer re-parole to a residential drug and alcohol treatment program. About two months later, the Board again declared Harmer delinquent. The Board subsequently recommitted Harmer as a technical parole violator based on his admission to two technical parole violations.

In 2008 and 2009, the Board issued decisions denying Harmer re-parole. Thereafter, in 2010, the Board once again granted Harmer re-parole to an inpatient drug and alcohol treatment program.

In 2012, the Board again declared Harmer delinquent. Shortly thereafter, police arrested Harmer on a Board warrant. The Board subsequently charged Harmer with three technical parole violations. Harmer executed a waiver of his right to a preliminary hearing, a violation hearing and counsel at those hearings. Additionally, he admitted to the charged violations.

In August 2012, the Board recommitted Harmer to an SCI as a technical parole violator to serve six months' back time. The Board found that diverting Harmer from confinement at that time posed an undue risk to public safety.

Harmer filed a petition for administrative relief challenging the Board's determination that he posed an undue risk to public safety, and, therefore, could not be placed in a CCC. The Board denied Harmer's administrative appeal. Harmer filed a petition for review with this Court.

■ On appeal,[2] Harmer first contends the Board erred in determining he posed an undue risk to public safety so as to warrant his recommitment to an SCI rather than diversion to a CCC. He argues this is a case of first impression in that it concerns the meaning of the ambiguous phrase "undue risk to public safety" set forth in former Section 6138(c)(6) of the Parole Code. Pet'r's Br. at 7. Here, Harmer asserts the Board relied on mere speculation in deeming him an undue risk to public safety. He further maintains that, because the phrase "undue risk to public safety" is ambiguous, the "rule of lenity" should apply and the ambiguity of that phrase should be construed in his favor.

Harmer also asserts the Board made its determination that he posed an undue risk to public safety after the violation hearing. He contends the Board's finding in this regard is arbitrary and capricious because no risk assessment was performed on him until after the Board recommitted him.

At the outset, we note, contrary to Harmer's assertions, this is not a case of first impression. Recently, we were asked to decide whether the Board abused its discretion in recommitting a former parolee to an SCI rather than diverting him to a CCC pursuant to former Section 6138(c)(6) of the Parole Code. See Baldelli v. Pa. Bd. of Prob. & Parole, 76 A.3d 92 (Pa.Cmwlth.2013). In that case, after a prior parole failure consisting of several technical parole violations, the Board re-paroled the parolee, Brett Baldelli (Baldelli), to a CCC and ultimately placed him in an inpatient drug treatment program. While at the treatment facility, Baldelli

2. Our review is limited to determining whether constitutional rights were violated, whether the adjudication was in accordance with law, and whether necessary findings were supported by substantial evidence. *Baldelli v. Pa. Bd. of Prob. & Parole,* 76 A.3d 92 (Pa. Cmwlth.2013).

tested positive for drug use and was discharged for failing to successfully complete the program. As a result, the Board charged Baldelli with technical parole violations. Baldelli admitted to the violations and waived his rights to a hearing and counsel. Based on his admissions, the Board recommitted Baldelli to an SCI rather than diverting him to a CCC on the ground that such a diversion would pose an undue risk to public safety. After the Board denied Baldelli's administrative appeal, Baldelli appealed to this Court.

Before this Court, Baldelli argued the Board abused its discretion in recommitting him to an SCI rather than diverting him to a CCC on the ground he posed an undue risk to public safety. He asserted the record lacked evidence to show his diversion to a CCC constituted a threat to public safety where the record revealed he merely consumed drugs while on parole and did not engage in any dangerous behavior.

Rejecting this argument, we first observed that this Court affords significant deference to the Board in parole matters based on the Board's highly specialized expertise in this area. Further, we explained that in reviewing the Board's discretionary decisions, we would only conclude that the Board made an arbitrary, capricious or unreasonable determination where the record lacked substantial evidence to support the Board's determination. We then explained:

> Former Section 6138(c)(6) of the Parole Code stated, 'The [B]oard *shall* divert technical parole violators from confinement in a State correctional institution *unless the parolee's diversion poses an undue risk to public safety.'* *Former* 61 Pa.C.S. § 6138(c)(6) (emphasis added). Thus, pursuant to this Section the Board retained discretion *not* to divert technical parole violators from

SCIs where such diversions posed an undue safety risk. As a result, the Board's decision regarding diversion necessarily contains a discretionary component. *See Dickerson v. Pa. Dep't of Prob. & Parole*, 2011 WL 10844391 (Pa.Cmwlth., No. 947 M.D.2010, filed July 12, 2011) (unreported) (explaining that 6138(c)(6) of the Parole Code vests the Board with discretion not to divert technical parole violators from SCIs where such diversions pose an undue safety risk) . . . .

In its recommitment order here, the Board stated: 'The Board finds that diverting you from confinement at this time poses an undue risk to public safety.' In light of Baldelli's problematic history while on parole, we discern no abuse of discretion in the Board's finding that diversion from an SCI posed an undue risk to public safety . . . .

In sum, in the period after his first release on parole, Baldelli admitted to multiple technical parole violations, including possession of a weapon. Further, after the Board re-paroled Baldelli to a CCC, he tested positive for drugs and attempted to submit a falsified urine specimen, leading the Board to characterize his adjustment after his release on re-parole as 'poor.' Additionally, after the Board placed Baldelli into an inpatient drug treatment program, he admitted to using synthetic marijuana and was discharged from the program prior to successful completion. As a result, the Board decided to recommit Baldelli to an SCI rather than divert him to a CCC.

In light of the above circumstances, we discern no abuse of discretion in the Board's decision to recommit Baldelli to an SCI, rather than re-releasing him to a CCC, based on his most recent admitted technical parole violations. Given

Baldelli's history of parole failure, we cannot say the Board abused its discretion in determining that diverting Baldelli from an SCI would pose an undue risk to public safety. Indeed, the record of this history belies Baldelli's claim that the Board lacked evidence supporting its determination that Baldelli posed an undue risk to public safety.

*Baldelli*, 76 A.3d at 96–97 (footnotes and record citations omitted).

■ As in *Baldelli*, in its recommitment order, the Board here made a finding that, "DIVERTING [HARMER] FROM CONFINEMENT AT THIS TIME POSES AN UNDUE RISK TO PUBLIC SAFETY." Certified Record (C.R.) at 64. Also, similar to the Board's decision in *Baldelli*, the Board's decision here states: "REASON: PATTERN OF PAROLE FAILURE IN YOUR CRIMINAL HISTORY RECORD. NOT AMENABLE TO PAROLE SUPERVISION. PRIOR PAROLE/PROBATION FAILURE. DECLARED DELINQUENT BY THE BOARD. VIOLATIONS ESTABLISHED." *Id.* In light of Harmer's problematic history on parole, we discern no abuse of discretion in the Board's finding that diversion from an SCI posed an undue risk to public safety.

More specifically, in the period after his *first* release on parole from his state sentence for theft and multiple counts of burglary, Harmer was declared delinquent. C.R. at 12. He subsequently admitted to several violations, including leaving the district without permission, failing to report, using drugs and failing to attend an outpatient drug treatment program, and was recommitted. C.R. at 13.

Thereafter, the Board *re-paroled* Harmer to a CCC. C.R. at 14–20. The Board again declared Harmer delinquent. C.R. at 21. The Board subsequently recommitted Harmer based on his failure to report as instructed. C.R. at 22.

The Board then *again re-paroled* Harmer to a residential drug and alcohol treatment program. C.R. at 23–32. Notably, with regard to this re-parole decision, the record contains a "Supplement to Board Action," written by a parole staff technician in the case management division, which states: "UPON COMPLETION OF INPATIENT DRUG AND ALCOHOL ASSESSMENT [CONFIRM] THE APPROPRIATENESS OF ANY HOME PLAN SUBMISSION WITH [HARMER'S] WIFE, YOU'LL NOTE IN THE LAST SUMMARIZATION REPORT [HARMER] PARTIALLY BLAMING HER FOR HIS TROUBLE. THE OVA [ (OFFICE OF THE VICTIM ADVOCATE) ] INPUT *CONCERNING HIS ADDICTION AND REPORTED DOMESTIC ABUSE IS COMPELLING* . . . ." C.R. at 27 (emphasis added). About two months after his re-parole, the Board again declared Harmer delinquent, C.R. at 33, and it subsequently recommitted Harmer for technical parole violations, including changing his residence without permission and failing to successfully complete the treatment program. C.R. at 34.

Thereafter, the Board *again re-paroled* Harmer to an inpatient drug and alcohol treatment program. C.R. at 40–49. Again, the Board declared Harmer delinquent. C.R. at 50. The Board then charged Harmer with the instant technical parole violations, changing his residence without permission, failing to report as instructed and violating curfew, which Harmer admitted. C.R. at 64.

In sum, the record reveals the Board released Harmer on parole (or re-parole) four times. Each time the Board released Harmer it declared him delinquent. During his periods of parole or re-parole, Harmer committed 10 technical parole violations, including using drugs, leaving the district without permission, failing to report as instructed on multiple occasions, and twice failing to successfully complete

required drug treatment programs. Further, on three occasions, the Board paroled Harmer to a CCC or residential or inpatient drug or alcohol treatment program. On each of these occasions, Harmer was later declared delinquent. Given Harmer's persistent history of parole failure, we cannot say the Board abused its discretion in determining that diverting Harmer from an SCI would pose an undue risk to public safety.

Additionally, the record regarding Harmer contains a notation regarding a report of domestic abuse. C.R. at 27. Because it is clear that Harmer is not currently amenable to parole supervision of any kind, we would defer to the Board's exercise of discretion even in the absence of this notation.[3]

■ Based on the above circumstances, we discern no abuse of discretion in the Board's decision to recommit Harmer to an SCI, rather than re-releasing him to a CCC, based on his most recent admitted technical parole violations.[4] Additionally, while Harmer takes issue with the fact that the Board made its determination that he posed an undue risk to public safety after the hearing, as explained more fully below, Harmer waived his right to hearing here. C.R. at 61.

■ Moreover, we reject Harmer's argument that it is necessary to resort to principles of statutory construction and the rule of lenity in order to construe what he contends is the ambiguous phrase "undue risk to public safety" in former Section 6138(c)(6) of the Parole Code.

■ "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). "The clearest indication of legislative intent is generally the plain language of a statute." *O'Connor v. City of Phila. Bd. of Ethics,* 71 A.3d 407, 415 (Pa.Cmwlth.2013) (citation omitted). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S. § 1921(b); *Bowman v. Sunoco,* —— Pa. ——, 65 A.3d 901 (2013). "When statutory words or phrases are undefined by the statute, the Court construes the words according to their plain meaning and common usage." *Osprey Portfolio LLC v. Izett,* —— Pa. ——, ——, 67 A.3d 749, 755 (2013). A statute must be given its plain and obvious meaning. *Cryan (EA Media) v. Snyder Cnty. Bd. of Assessment Appeals,* 29 A.3d 873 (Pa.Cmwlth.2011), *appeal denied,* 616 Pa. 670, 51 A.3d 839 (2012).

---

**3.** It is noteworthy that under the current version of Section 6138 of the Parole Code, in the case of technical parole violators, "[d]etention and recommitment ... shall be in a community corrections center or a community corrections facility, *unless the board determines that one of the following conditions is present ...* (iv) *The parolee has absconded, and the parolee cannot be safely diverted to a community corrections center or a community corrections facility."* 61 Pa.C.S. § 6138(c)(1)(iv) (emphasis added).

**4.** Harmer further asserts the "diversion consideration" section of the Board's Hearing

Report form is inconsistent with the Board's ultimate decision to recommit him to an SCI. Certified Record (C.R.) at 60. Contrary to Harmer's assertions, the handwritten note in the diversion consideration section of the Board's report states: "Reparole case, previously recommitted by PBPP in 2000, 2004, and 2007. Offender absconded 4–13–12, did not turn himself in, remained on non-reporting status until 6–19–12 when arrested by police on PBPP warrants." *Id.* Contrary to Harmer's oblique contention, we discern no inconsistency in the handwritten note on the Board's report and the Board's ultimate decision to recommit Harmer to an SCI.

■ Only "[w]hen the words of the statute are not explicit" may this Court resort to statutory construction. 1 Pa.C.S. § 1921(c). "A statute is ambiguous or unclear if its language is subject to two or more reasonable interpretations." *O'Connor,* 71 A.3d at 415. If we deem the statutory language ambiguous, we must then ascertain the General Assembly's intent by statutory analysis, through which we may consider numerous relevant factors. 1 Pa.C.S. § 1921(c); *Bowman.*

■ In addition, as to the rule of lenity, in *Richards v. Pennsylvania Board of Probation and Parole,* 20 A.3d 596 (Pa. Cmwlth.) *(en banc ), appeal denied,* 611 Pa. 684, 29 A.3d 374 (2011), we observed:

> Ambiguities should and will be construed against the government. This principle has its foundation in the rule of lenity that provides that any ambiguity in a criminal statute will be construed in favor of the defendant. The rule of lenity requires a clear and unequivocal warning in language that people generally would understand, as to what actions would expose them to liability for penalties and what the penalties would be. Application of the rule of lenity extends beyond the context of criminal statutes.

*Id.* at 600 (citations omitted). Further,

> The rule of lenity, though it has its origins in common law, is consistent with Pennsylvania's rules of statutory construction, which require that provisions of a penal statute, whether that statute be civil or criminal, must be construed narrowly. *See* 1 Pa.C.S. § 1928(b) ("All provisions of a statute of the classes hereafter enumerated shall be strictly construed: (1) penal provisions . . .").

*Sondergaard v. Dep't of Transp., Bureau of Driver Licensing,* 65 A.3d 994, 997–98 (Pa.Cmwlth.2013). "To apply the rule of lenity, it is not enough that a statute is penal *it must be ambiguous as well." Id.* at 999 (emphasis added).

Here, the language of former Section 6138(c)(6) of the Parole Code is not ambiguous. The plain language of that provision states: "The [B]oard shall divert technical parole violators from confinement in a State correctional institution unless the parolee's diversion poses an undue risk to public safety." *Former* 61 Pa.C.S. § 6138(c)(6) of the Parole Code. While the phrase "undue risk to public safety" is undefined in the Parole Code, we construe it according to its plain meaning and common usage. *Osprey Portfolio.* In sum, because the language of former Section 6138(c)(6) of the Parole Code is explicit, we reject Harmer's arguments that resort to statutory construction and the rule of lenity are necessary.

■ In addition, we reject Harmer's contention that the Board was estopped from finding that he posed an undue risk to public safety where the Board did not make such a finding in its prior recommitment orders, and Harmer admitted to the charges based on his belief that, in doing so, he would be placed into a CCC as "relayed" to him by a Board representative. Pet'r's Br. at 12.

With regard to the alleged statement by the Board's representative, we rejected a similar claim in *Baldelli.* There, we explained that in two prior decisions we upheld the same uncounseled written waivers despite the parolees' claims that they executed the waivers and admitted to the violations in exchange for promises of placement into a diversionary program or re-parole. *See McKenzie v. Pa. Bd. of Prob. & Parole,* 963 A.2d 616 (Pa.Cmwlth. 2009); *Prebella v. Pa. Bd. of Prob. & Parole,* 942 A.2d 257 (Pa.Cmwlth.2008).

Like the parolees in *Baldelli, McKenzie* and *Prebella,* Harmer executed a waiver of

violation hearing and counsel and admission form, in which he "knowingly, voluntarily and willingly" admitted to the three parole violations charged. C.R. at 61. On the form, Harmer indicated he waived his rights to a preliminary hearing, a violation hearing and his right to counsel at those hearings, "of [his] own free will, *without any promise, threat or coercion." Id.* (emphasis added). Harmer did *not* state that he agreed to waive his rights and admit to the violations in exchange for a Board representative's promise that he would be placed in a CCC. *Id.*[5] Further, Harmer had 10 days to withdraw his admission to the parole violations, and he did not do so. *Id.* Thus, Harmer's argument that the Board was estopped from diverting him to a CCC fails.

■ Also, the fact that the Board did not previously determine that Harmer posed an undue risk to public safety in its prior recommitment orders did not preclude the Board from doing so based on Harmer's most recent parole violations. In particular, with the exception of the recommitment order directly at issue here, the Board's earlier recommitment orders *predate* former Section 6138(c)(6) of the Parole Code, which required the Board to divert technical parole violators from confinement in an SCI "unless the parolee's diversion posed an undue risk to public safety." *Id.* As a result, the Board was

not called upon by statute to make such a determination in its prior orders in this case, rendering Harmer's estoppel argument unavailing.

■ Based on the foregoing, we affirm.[6]

### ORDER

**AND NOW,** this 7th day of January, 2014, the order of the Pennsylvania Board of Probation and Parole is **AFFIRMED.**

DISSENTING OPINION BY President Judge PELLEGRINI.

At issue in this case is whether the Pennsylvania Board of Probation and Parole (Board) complied with the statutory mandate under former Section 6138(c)(6) of the Parole Code providing to divert technical parole violators from confinement in a State correctional institution rather to confinement in a Community Correction Facility or Community Correction Center (collectively "CCC") "unless the parolee's diversion poses an undue risk to public safety."[1]

The majority holds that Harmer's long history of parole failure equates to being an undue risk to public safety so he must serve time in a State correctional institution rather than serve his time in a CCC. By making that false equivalency, the ma-

---

**5.** In the space provided on the form Harmer stated: "Mr. Harmer admits to the charges and has taken the beginning steps to rehabilitate himself. A waiver was signed to assist in expediting and freeing up valuable resources. Additionally, Mr. Harmer states that he was homeless." C.R. at 61.

**6.** In his Statement of Questions Involved, Harmer also asks whether the Board deprived him of his right to equal protection by diverting similarly situated absconders who also had prior violations. However, Harmer presents no argument on this issue; therefore, this issue is waived. *See In re Condemnation by*

*Commonwealth, Dep't of Transp.,* 76 A.3d 101 (Pa.Cmwlth.2013) (where issues are raised in the statement of questions involved, but not addressed in the argument section of the brief, courts find waiver).

Moreover, Harmer attaches documents to his brief that are not part of the certified record. We cannot consider extra-record materials. *Budd Co. v. Workers' Comp. Appeal Bd. (Kan),* 858 A.2d 170 (Pa.Cmwlth.2004).

**1.** *See former* Section 6138(c)(6) of the Prisons and Parole Code, 61 Pa.C.S. § 6138(c)(6) (Parole Code).

jority frustrates the intent of the General Assembly to divert inmates from expensive State correctional institutions to less expensive CCCs and alleviate the need to build and operate new prisons.

There is no dispute that the record amply supports the Board's finding that Barry Harmer (Harmer) has a history of parole failure having been released on parole four times. However, parole failure only means that a person is not a good candidate for parole, which is a different determination than whether he would be an undue threat to public safety if he served his time in a CCC. Moreover, each time Harmer had been declared delinquent, it was for committing technical parole violations that did not involve any threat to the public, *i.e.*, using drugs, leaving the district without permission, failing to report as instructed on multiple occasions, and twice failing to successfully complete required drug treatment programs. No facts exist to indicate that he was a risk, let alone an **undue** risk to public safety if he served his time in a CCC.

The majority seems to recognize that parole failure alone is insufficient by scouring through the record to find a notation on a Board supplement form that said:

UPON COMPLETION OF INPATIENT DRUG AND ALCOHOL ASSESSMENT [CONFIRM] THE APPROPRIATENESS OF ANY HOME PLAN SUBMISSION WITH [HARMER'S] WIFE, YOU'LL NOTE IN THE LAST SUMMARIZATION REPORT [HARMER] PARTIALLY BLAMING HER FOR HIS TROUBLE. THE OVA [ (OFFICE OF THE VICTIM ADVOCATE) ] INPUT CONCERNING HIS ADDICTION AND REPORTED DOMESTIC ABUSE IS COMPELLING.

(Certified Record at 27).

First, unlike in *Baldelli v. Pennsylvania Board of Probation and Parole*, 76 A.3d 92 (Pa.Cmwlth.2013), where one of the technical violations was for the admitted possession of a weapon, this report was not the basis for the revocation of Harmer's parole, he did not admit to this violation, and the Board did not advance it in its brief as one of the reasons that he is an undue risk to public safety. Second, it is not for this Court to scour through the record to come up with its own reason to support the Board's decision based on a "reported," *i.e.*, unproven, domestic abuse claim to which Harmer had no opportunity to respond. Simply, it violates our role as a reviewing court, not to mention due process.

Because none of the reasons given by the Board establish that Harmer is an undue risk to public safety if he is placed in a CCC, I respectfully dissent.