IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Berisford England,                          :
                                            :
                    Petitioner              :
                                            :
        v.                                  : No. 960 C.D. 2020
                                            : Submitted: March 5, 2021
Pennsylvania Parole Board,                  :
                                            :
                    Respondent :

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED: July 16, 2021


        Berisford England (England), an inmate at the State Correctional
Institution (SCI) at Mahanoy, petitions for review of the Pennsylvania Parole
Board's (Board) decision denying his request for administrative relief, recommitting
him as a technical parole violator (TPV) to serve six months in an SCI, and listing
him for review for reparole on or after March 20, 2021.  On appeal, England claims
that the Board erred in recommitting him to an SCI instead of a community
corrections center/community corrections facility (CCC/CCF), and denying him
automatic reparole at the conclusion of his six-month confinement as a TPV.
Appointed counsel, Kent D. Watkins, Esquire (Counsel), has filed an application to
withdraw as counsel, asserting that England's claims are meritless.   For the
following reasons, we grant Counsel's application and affirm the Board's order.

On March 1, 2016, England pleaded guilty to the charge of robbery before the Court of Common Pleas of Philadelphia County and was sentenced to three to six years of incarceration in an SCI. Certified Record (C.R.) at 1. At that time, his maximum sentence date was September 19, 2021.[1] *Id.* at 2.

England was released on parole on September 19, 2018. C.R. at 7. On November 6, 2019, parole staff attempted to make contact with England at his approved residence, but England did not answer the door. *Id.* at 20. Parole staff left a letter directing England to contact parole staff within 24 hours. *Id.* The next day, England left a message with parole staff indicating that he had received the letter. *Id.* On November 13, 2019, parole staff again attempted to contact England, via text message, to schedule a home visit. *Id.* England replied to the text that evening, explaining that he had moved from his approved residence; however, he did not provide his new address. *Id.* Eventually, England admitted that he had moved to Georgia. *Id.* As such, the Board declared him delinquent effective November 14, 2019, and issued a detainer warrant on December 6, 2019. *Id.* at 12-13.

On December 6, 2019, England turned himself in to the Board's Norristown Sub-Office, and he was placed in custody. C.R. at 21. On December 10, 2019, he waived his right to counsel and to violation and panel hearings, and admitted to violating three conditions of his parole, including: leaving the district without permission, moving without permission, and use of drugs. *Id.* at 16-17. The Board, however, did not immediately revoke England's parole based on his admission/waiver. Instead, on December 18, 2019, the Board issued a decision,

---

[1] This sentence was to run concurrent to a probation revocation in the Court of Common Pleas of Montgomery County for retail theft and a probation revocation in Bucks County for possession of drug paraphernalia. Certified Record (C.R.) at 1. The controlling maximum sentence dates on those convictions were April 14, 2020, and September 2, 2017, respectively. *Id.* at 2.

2

noting that probable cause on England's technical parole violations had been established, directing that England be detained in a parole violator CCC, and holding its decision on the technical violations in abeyance pending England's completion of the recommended programs. C.R. at 25-27. While detained, however, and before he could be transferred to a secure parole violator CCC in lieu of recommitment, England committed multiple assaultive misconducts in SCIs. *Id.* at 37, 39. Specifically, on February 6, 2020, England threatened an SCI employee with bodily harm, and, on March 18, 2020, he threatened to "stick" his cellmate and refused to obey an order. *Id.* at 39. Following disciplinary hearings, England was found guilty of both misconducts, which were later deemed to constitute assaultive behavior by a Department of Corrections (DOC) hearing examiner. *Id.* at 29, 38-39.

By decision mailed on May 8, 2020, the Board recommitted England as a TPV to serve six months' backtime in an SCI for violating the three parole conditions to which he previously admitted. C.R. at 43. The Board also recalculated England's maximum sentence date from September 19, 2021, to October 11, 2021, based on the parole violations. *Id.* at 41, 43. The Board found that England was an identifiable threat to public safety and a parolee who could not be safely diverted to a CCC/CCF, and further noted that he had demonstrated unmanageable behavior making him not amenable to diversion. *Id.* at 37, 43. The Board also noted England's poor adjustment to supervision and his commission of disciplinary infractions involving assaultive misconducts in SCIs. *Id.* Because England was no longer in good standing with the Board, it denied him automatic reparole and indicated that England would be reviewed for reparole one year from the date of his last assaultive misconduct, *i.e.*, on or after March 20, 2021. *Id.* at 36-39, 44.

3

On May 21, 2020, England filed a *pro se* administrative appeal, which the Board received on June 1, 2020. C.R. at 45-46. Therein, he argued that, because he only committed technical parole violations, he should have been recommitted to a CCC/CCF, not an SCI, pursuant to the Act of July 5, 2012, P.L. 1050, No. 122 (Act 122). *Id.* at 46. England also argued that, contrary to what the Board stated in its May 8, 2020 decision, he had never been sent to or resided in a CCC/CCF, and, therefore, the Board erred in recommitting him to an SCI for the reason that he was "discharged from a parole violator program" in a CCC/CCF. *Id.* As a result of the Board's "incorrect and unsubstantiated" recommitment of England to an SCI, he requested that he be granted immediate release on parole. *Id.*

By decision mailed on September 16, 2020, the Board denied England's administrative appeal and affirmed its May 8, 2020 decision. C.R. at 62-63. In doing so, the Board referenced its December 18, 2019 decision diverting England to a parole violator CCC for technical violations, and observed that while England was awaiting placement in a CCC in SCI-Phoenix, he incurred two misconducts that were later found to constitute assaultive behavior by a DOC hearing examiner. *Id.* at 62. The Board explained that it acted within its authority in denying England automatic reparole because, under Section 6138(d)(5) of the Prisons and Parole Code (Parole Code), 61 Pa. C.S. § 6138(d)(5), "automatic reparole does not apply to [TPVs] who commit disciplinary infractions involving assaultive behavior." *Id.* The Board also determined that it acted within its discretion in denying automatic reparole without conducting an evidentiary hearing, as England was already afforded an opportunity to challenge the misconducts at issue at the hearing thereon. *Id.* The Board did not specifically address England's argument concerning his recommitment to an SCI, rather than a CCC/CCF.

4

England, through Counsel, filed the instant petition for review,[2] alleging that the Board's "order revoking parole confitures [sic] an error of law, a violation of [England's] constitutional rights[,] and is not supported by substantial evidence."[3] Petition for Review ¶5. Thereafter, Counsel filed the application to withdraw, along with a no-merit letter, asserting that the appeal is meritless.

When evaluating an application to withdraw from representation of a parolee who challenges a revocation decision, we must determine whether counsel has satisfied the following requirements of: (1) notifying the inmate of the application to withdraw; (2) providing the inmate with a copy of a no-merit letter in accordance with *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988); and (3) advising the inmate of his right to retain new counsel or file a brief on his own behalf. *Miskovitch v. Pennsylvania Board of Probation & Parole*, 77 A.3d 66, 69 (Pa. Cmwlth. 2013). The no-merit letter must detail the extent of counsel's review and explain why the inmate's claim is meritless. *Zerby v. Shanon*, 964 A.2d 956, 961 (Pa. 2009).

Counsel's no-merit letter herein meets the *Turner* requirements. In his no-merit letter, Counsel recites England's argument "that he had never been placed in a CCC/CCF program and should not have been in an SCI[,]" and notes that "[h]e gives no basis for this assertion." No-Merit Letter at 3. Counsel also explains that "[i]n [England's] case, [England] was found guilty of misconduct involving threatening an employee or their [sic] family with bodily harm on March 18, 2020[,]

---

[2] Our scope of review is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *McCloud v. Pennsylvania Board of Probation and Parole*, 834 A.2d 1210, 1212 n.6 (Pa. Cmwlth. 2003).

[3] No factual errors are asserted.

5

and February 6, 2020[,]" and that "[a]s a result, [England] is not entitled to immediate parole or placement in a CCC/CCF." *Id.* at 4.

This Court has previously addressed this issue, albeit under former Section 6138(c)(6) of the Parole Code, *formerly* 61 Pa. C.S. §6138(c)(6), repealed by Section 15 of Act 122, which section required that the Board divert TPVs from confinement in an SCI unless the parolee's diversion posed an undue risk to public safety. *See Harmer v. Pennsylvania Board of Probation and Parole*, 83 A.3d 293 (Pa. Cmwlth. 2014) (addressing a parolee's challenge to a Board decision recommitting him to an SCI rather than diverting him to a CCC as required by statute); *Baldelli v. Pennsylvania Board of Probation and Parole*, 76 A.3d 92 (Pa. Cmwlth. 2013) (same).

Notably, Section 20 of the Act of December 18, 2019, P.L. 776, No. 115, amended Section 6138(c) of the Parole Code by, *inter alia*, amending the language of Section 6138(c)(1) and adding Section 6138(1.2) and (1.3) to the Parole Code, which subsections now govern the Board's determination of TPVs' recommitment terms and whether TPVs are to be recommitted to a CCC/CCF or an SCI. *See* Section 6138(c)(1), (1.2), and (1.3) of the Parole Code, 61 Pa. C.S. §6138(c)(1), (1.2), and (1.3).

Specifically, Section 6138(c)(1.3)(v) of the Parole Code states:

> If the [B]oard determines that one of the following conditions is present regarding a parolee who violates the terms and conditions of parole, the parolee shall not be eligible for detention under paragraph (1.2) and shall be detained in or recommitted to a[n SCI:]

* * *

6

(v) There exists an identifiable threat to public safety, and the parolee cannot be safely diverted to a community corrections center [or] community corrections facility[.]

61 Pa. C.S. §6138(c)(1.3)(v).

In its Violation Hearing Report, the Board directed that England be placed in an SCI because of an "[i]dentifiable threat to public safety and [he] cannot be safely diverted to a CCC/CCF at this time," because England "is demonstrating unmanageable behavior, which makes him [] not amenable to diversion." C.R. at 36-37. The Board also noted that it had "initially decided to divert [England] to a secure community center for his parole violations in lieu of recommitment[; h]owever, before he could be transferred to the center he committed multiple assaultive misconducts in the SCI." *Id.* at 37.[4] In light of the foregoing, Counsel correctly determined that England's first claim on appeal is without merit.

As indicated above, Counsel also discusses England's challenge to the Board's rescission of his right to automatic reparole, and concludes that England "is

---

[4] In the Violation Hearing Report, the Board added the following information:

This was initially a diversion case. However, before [England] could be transferred to a center, he committed two assaultive misconducts in the SCI. On 02/06/2020, he violated rule #15 - Threatening an Employee or Their Family with Bodily Harm. This misconduct[] occurred when he threatened to "fuck up" a staff member after she advised him that he could not have his commissary that day. DOC found him guilty of the infraction at his 02/07/2020 disciplinary hearing.

On 03/18/2020, he violated rule #17 - Threatening Another Person and rule #35 - Refusing to Obey an Order. These misconducts occurred when he refused to lock in and threatened to "stick" his cellmate. DOC found him guilty of both infractions at his 03/20/2020 disciplinary hearing.

C.R. at 39.

7

not entitled to immediate parole or placement in a CCC/CCF" because he "was found guilty of misconduct involving threatening an employee or their [sic] family with bodily harm on March 18, 2020[,] and February 6, 2020. ([C.R. at] 32-33.)" No-Merit Letter at 4. The Board's Violation Hearing Report also directs England's recommitment "as a TPV to [an] SCI to serve six months," and the rescission of his "automatic reparole due to assaultive misconducts committed in the SCI," with "review for reparole on or after 03/20/2021." C.R. at 38.

Counsel's no-merit letter likewise properly addresses England's second issue, *i.e.*, that he should be granted immediate parole, presumably because he would have been entitled to be automatically reparoled had he actually been transferred to the parole violator CCC in accordance with the Board's December 18, 2019 decision and/or had he not committed the assaultive misconducts. In doing so, Counsel correctly explains that a parolee who has committed assaultive behavior forfeits his right to automatic reparole. *See* Section 6138(d)(3)(i) and (5)(i) of the Parole Code, 61 Pa. C.S. §6138(d)(3)(i), (5)(i).[5] Again, Counsel correctly concluded that England's second claim on appeal is without merit.

---

[5] Specifically, Section 6138(d)(3)(i), (5)(i) provides, as follows:

> **(d) Recommitment to correctional facility.--**A [TPV] recommitted to a[n SCI] under subsection (c) shall be recommitted as follows:
>
> * * *
>
> (3) Except as set forth in paragraph [(5)], the parolee shall be recommitted for one of the following periods, at which time the parolee shall automatically be reparoled without further action by the Board:

**(Footnote continued on next page…)**

8

Accordingly, we grant Counsel's application for leave to withdraw as counsel, and affirm the Board's order.

_____
MICHAEL H. WOJCIK, Judge

---

(i) For the first recommitment under this subsection, a maximum period of six months.

* * *

(5) The time limit under paragraph (3) shall not be applicable to a parolee who:

(i) Committed a disciplinary infraction involving assaultive behavior, sexual assault, a weapon or controlled substances[.]

61 Pa. C.S. §6138(d)(3)(i), (5)(i). We note, generally, that Section 6138(d)(3)-(5) was added to the Parole Code by the Act of July 5, 2012, P.L. 1050, No. 122 (Act 122).

9

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Berisford England,                      :
                                        :
                    Petitioner          :
                                        :
        v.                              : No. 960 C.D. 2020
                                        :
Pennsylvania Parole Board,              :
                                        :
                    Respondent          :

# **O R D E R**

AND NOW, this 16<u>th</u> day of <u>July</u>, 2021, the Application to Withdraw as Counsel filed by Kent D. Watkins, Esquire, is GRANTED, and the order of the Pennsylvania Parole Board dated September 16, 2020, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge